UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-23995-HUCK/Becerra

**SAMEUL SCOTT, JR.**,

    *Plaintiff*,

v.

**CITY OF MIAMI** *et al.*,

    *Defendants*.

_____/

**ORDER**

    **THIS CAUSE** is before the Court upon Defendant Miguel Hernandez's Motion to Dismiss [ECF No. 26] and the remaining Defendants' Motion to Dismiss [ECF No. 27].[1] Plaintiff Samuel Scott, Jr. filed a Response in Opposition [ECF No. 31], to which the Defendants filed a single Reply [ECF No. 34]. In their Motions, Defendants seek dismissal of Scott's Complaint on federal and state immunity grounds. However, because the Complaint alleges facts that – taken as true – do not establish Defendants' entitlement to these immunities, the Court denies Defendants' Motions.

**I. BACKGROUND**

    This is a civil rights action arising from Scott's arrest on June 1, 2018. On that date, while he was visiting a relative in the City of Miami, Scott's car, a black Jeep Compass, was stolen. Compl. ¶¶ 12–13. At 6:00 PM, Scott reported this to the police. *Id.* ¶ 13. Five minutes after Scott

---

[1] Hernandez's Motion will be cited as "Hernandez Mot." The remaining Defendants' Motion will be cited as "City Mot."

1

reported his car stolen, Officer Jonathan Guzman observed a black Jeep Compass two miles from Scott's location, going twenty miles per hour over the speed limit. *Id.* ¶ 14. As Officer Guzman began pursuing the Jeep, it collided with another vehicle. *Id.* The driver of the Jeep jumped out of the car and fled. *Id.* Officer Guzman did not see the driver's face, but observed that he was a heavy-set black male over six feet, and was wearing a white tank top. *Id.*[2]

While Officer Guzman was observing the hit-and-run accident, Officer Michael Bloom met Scott where he had reported the car stolen. *Id.* ¶ 15. After asking some questions about the car, Officer Bloom asked Scott to complete a stolen vehicle affidavit, which Scott did. *Id.* After Scott completed the affidavit, Officer Guzman arrived, accompanied by Officers Brandon Williams, Miguel Hernandez, and Randy Carriel. *Id.* ¶ 16. Upon confirming that Scott had completed the affidavit, the officers had Scott place his hands on Officer Bloom's patrol car. *Id.* Officer Carriel had his taser drawn and ready to use on Scott. *Id.* Officers Williams and Hernandez began to search Scott, removing personal items such as his wallet. *Id.* During this search, Officer Guzman noticed that Scott was wearing a white undergarment beneath his black t-shirt. *Id.* Scott was arrested, handcuffed, and placed in Officer Guzman's vehicle. *Id.* ¶ 17.

Throughout this interaction with the officers, Scott proclaimed his innocence, explaining that he had called the police for assistance and that he was with Officer Bloom during Officer Guzman's car chase. *Id.* Despite Scott's protest, the officers took Scott to county jail, where he was booked and strip-searched. *Id.* ¶ 19. Scott was released on $5,000 bond the following night. *Id.* ¶ 20.

Scott was charged with reckless driving, leaving the scene of an accident, false reporting of a crime, carrying a concealed weapon without a license, and possession of marijuana. *Id.* ¶ 18.

---

[2] Scott is a black male standing five feet, ten inches, and was wearing a black t-shirt on the day his car was stolen. Compl. ¶ 12.

Scott alleges that he was not in possession of a weapon or drugs when he was arrested. *Id.* ¶ 17. Scott also alleges that he was not the driver of the Jeep Compass involved in the hit-and-run accident. *Id.* Scott retained private counsel to defend against the charges, which the State of Florida ultimately dropped. *Id.* ¶ 21.

From these allegations, Scott brings five causes of action. The first two derive from federal law, specifically, 42 U.S.C. § 1983. Count One alleges that the officers subjected Scott to an unlawful seizure in violation of the Fourth Amendment. *Id.* ¶ 23. Count Two alleges Officers Williams and Hernandez unlawfully searched Scott in violation of the Fourth Amendment. *Id.* ¶ 28. The remaining causes of action are based in Florida law. Count Three alleges a false arrest claim against the officers. *Id.* ¶ 33. Count Four alleges a false arrest claim against the City of Miami as the officers' employer. *Id.* ¶ 36. Count Five alleges a malicious prosecution claim against Officers Guzman and Bloom, whom Scott alleges were the "driving force" of Scott's state prosecution. *Id.* ¶ 54. Defendants[3] now move to dismiss Scott's Complaint under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A complaint need not contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that

---

[3] Scott's Complaint names all five officers – Hernandez, Bloom, Guzman, Williams, and Carriel – and the City of Miami as defendants.

offers "labels and conclusions," "naked assertion[s]," or "a formulaic recitation of the elements of a cause of action" does not satisfy this plausibility standard. *Id.*

When deciding a motion under Rule 12(b)(6), a court must "view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Ziyadat v. Diamondrock Hospitality Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). Additionally, if a court can draw any reasonable inferences from the allegations in the complaint, the court must draw those inferences in favor of the plaintiff. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). At bottom, a complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997).

### III. <u>ANALYSIS</u>

Defendants' Motions argue that they are entitled to qualified immunity from Scott's federal claims and sovereign immunity from Scott's state claims. Additionally, Officer Hernandez's Motion argues that Scott's Complaint is an impermissible shotgun pleading. The Court addresses the issue of shotgun pleading before turning to Defendants' remaining arguments. *Cf. Taig v. City of Vero Beach*, 2022 WL 463900, at *5 (S.D. Fla. Feb. 15, 2022).

A. <u>Shotgun Pleading.</u>

Shotgun pleadings are problematic because they fail to give the defendants adequate notice of the claims brought against them and the grounds for each claim. *Vibe Micro Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). The Eleventh Circuit has identified four categories of impermissible shotgun pleadings. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). Relevant here are the second and fourth categories. *See* Hernandez Mot. at 6. The second category is a complaint that is "replete with conclusory, vague, and

4

immaterial facts not obviously connected to any particular cause of action," and the fourth is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1322–23.

　　1. Second Category.

Scott's Complaint does not fall within *Weiland*'s second category of shotgun pleadings. The Complaint's "Statement of Facts" section – paragraphs twelve through twenty-two – tell a sequential story of Scott realizing his car was gone, calling the police, discussing the car with the officers, completing a stolen vehicle affidavit, and then being arrested, booked, and charged. The facts alleged in the Statement of Facts section are not vague. For example, Scott identifies individual officers multiple times. *E.g.*, Compl. ¶ 14 (identifying Officer Guzman as witnessing the collision); ¶ 15 (identifying Officer Bloom as arriving first); ¶ 16 (identifying Officers Williams and Hernandez as the ones who searched Scott and Officer Carriel as having his taser drawn); ¶ 17 (identifying Officer Guzman's patrol car). Nor are Scott's allegations immaterial. To the contrary, all of Scott's allegations in his Statement of Facts (i) give necessary background information, such as Scott's physical appearance and how his interaction with the police began; (ii) relate to the arrest that Scott claims was unlawful; (iii) relate to the search that Scott claims was unlawful; or (iv) relate to the imprisonment that Scott claims was unlawful.

Put simply, the Complaint's factual allegations do not constitute "conclusory, vague, and immaterial facts." *See Weiland*, 792 F.3d at 1322. Each factual allegation relates to one of the five causes of action that Scott asserts. And Scott does not "fail[] to reallege" his facts "in each cause of action." *See* Hernandez Mot. at 6. Indeed, to broadly and indiscriminately reallege the preceding allegations would violate Rule 8(a). *See Bardelas v. City of Doral, Fla.*, 2021 WL 2531074, at *4

(S.D. Fla. Apr. 15, 2021). Parties should instead – as Scott has done here – reallege only those facts which are relevant to the specific cause of action being alleged. *See, e.g.*, Compl. ¶ 30 (realleging facts related to Scott's presence with Officer Bloom during the car chase to illustrate a lack of probable cause to arrest and search Scott as the driver of the stolen Jeep).

    2. Fourth Category.

Scott's Complaint also does not fall within *Weiland*'s fourth category of shotgun pleadings. The Complaint does assert multiple claims against multiple defendants. But the Complaint also identifies to which defendant each claim relates. For example, Count One applies to all the officers, but not the City. Count Two, in contrast, applies only to Officers Williams and Hernandez, whom Scott alleges conducted the unlawful search. Count Three again implicates all the officers, but not the City. Count Four applies only to the City. And Count Five – similar to Count Two – applies only to Officers Bloom and Guzman.

Officer Hernandez argues that Scott fails to distinguish the actions taken by each of the five officers, but that is simply not so. Even a cursory review of the Complaint demonstrates that the opposite is true. *See* Compl. ¶ 15 (identifying Officer Bloom); ¶ 16 (identifying Officers Williams and Hernandez); ¶ 17 (identifying Officer Guzman); ¶ 50 (identifying Officers Guzman and Bloom).

Officer Hernandez cites *Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001), in support of his contention that the Complaint too imprecisely identifies which defendants did what actions. *Magluta* is distinguishable. In that case, the court labeled the complaint a shotgun pleading because it was "replete with allegations that the defendants engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Id.* at 1284

(internal quotations omitted). In the present case, however, no geographic or temporal realities "make plain" the impossibility of Scott's allegations. Nor does Scott simply and indiscriminately incorporate by reference each of the paragraphs in his Statement of Facts section or the paragraphs in the preceding counts. *See id.* (criticizing plaintiff's practice of "incorporat[ing] by reference the allegations made in a section entitled 'General Factual Allegations' . . . while also incorporating the allegations of any count or counts that precede it"). *Magluta* is therefore distinguishable from the instant case.

Similarly distinguishable are *Simmons v. Eddins*, 2015 WL 10433461 (N.D. Fla. Dec. 14, 2015) and *Dawson v. Jackson*, 2017 WL 3620254 (N.D. Ala. Aug. 23, 2017). Officer Hernandez relies on these cases to suggest that he cannot be liable for false arrest because Scott does not identify him as the arresting officer. *See* Hernandez Mot. at 8. Officer Hernandez reads *Simmons* and *Dawson* too broadly. In *Simmons*, the complaint identified an Officer Runge as the arresting officer. 2015 WL 10433461, at *4. Thus, Officers Smith, McCreary, and Dixon could not be liable for false arrest. *Id.* The same is true for *Dawson*: there, the plaintiff identified an Officer Jackson as the arresting officer, so Officer Watson could not be liable for false arrest. 2017 WL 3620254, at *6.

In the instant case, however, Scott does not identify who the arresting officer was. Moreover, it is easy to see how – without the benefit of discovery – a layperson is unable to identify who the arresting officer was, especially when five officers were on scene. Consequently, as pled, Scott's Complaint does not show Officer Hernandez to be immune from false-arrest liability. Recognizing that it must construe the allegations in the light most favorable to Scott, *see Keating*, 598 F.3d at 762, and that Scott may plead alternative, potentially inconsistent facts and theories of liability, *see Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014), the Court

concludes that the Complaint sufficiently apprises Officer Hernandez of his involvement in Scott's arrest, search, and imprisonment.

All told, the Complaint is not a shotgun pleading under either *Wieland*'s second or fourth category. After setting forth his Statement of Facts, Scott lays out his causes of action, each of which incorporates only the relevant and necessary factual material from the preceding Statement of Facts section. Further, although Scott may currently be unable to identify the arresting officer, Scott's allegations give sufficient notice for Officer Hernandez to know "which of the defendants [each] claim is brought against." *See Weiland*, 792 F.3d at 1323. Accordingly, Officer Hernandez's shotgun pleading argument fails.

B. Qualified Immunity.

Both Motions argue that qualified immunity precludes Scott's section 1983 claims (Counts One and Two). Crucial to the qualified immunity analysis is whether arguable probable cause or arguable reasonable suspicion existed for the officers' actions.

1. Arguable Probable Cause.

The issue in a qualified immunity analysis is not whether probable cause existed, but actually whether "arguable probable cause" existed. *Carter v. Butts Cnty., Ga.*, 821 F.3d 1310, 1320 (11th Cir. 2016). "An officer has arguable probable cause to arrest 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). The arguable probable cause inquiry is objective, ignoring an officer's subjective motivation. *Carter*, 821 F.3d at 1320.

At this stage, the Court's review is limited to the four corners of the Complaint. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). And here, Scott does not plead facts

sufficient to establish arguable probable cause. According to the Complaint, Officer Guzman observed the driver of the stolen Jeep to be six feet, two inches, while Scott is five feet, ten inches. Compl. ¶¶ 12, 14. The Complaint also alleges that Scott was wearing a black t-shirt, while the driver was wearing a white tank top. *Id.* ¶¶ 12, 14. Further, the Complaint alleges that Scott was with Officer Bloom during Officer Guzman's car chase. *Id.* ¶ 17. Finally, the Complaint alleges that Scott reported the vehicle as stolen at 6:00 PM and that Officer Guzman observed the collision two miles away at 6:05 PM. *Id.* ¶¶ 13, 14. Taking these allegations as true, a reasonable officer could not have believed that probable cause existed to arrest Scott as the driver of the stolen Jeep.

Defendants argue that Scott matched the description of the car thief. *See* City Mot. at 7. But to agree with Defendants – effectively (i) saying that the four-inch height difference between Scott and the actual driver is close enough to establish arguable probable cause and (ii) ignoring the different colored shirts – would be to construe the Complaint in Defendants' favor, which the Court must not do. *Cf. St. George*, 285 F.3d at 1338 (declining to find arguable probable cause where plaintiff did not match the description of the suspect).

Moreover, the timing alleged in the Complaint does not support a finding of arguable probable cause. Scott reported his car stolen at 6:00 PM. Five minutes later, and two miles away, Officer Guzman saw the stolen Jeep crash and the driver flee the scene. At the same time, Officer Bloom was arriving to the location from where Scott had called the police. To that find arguable probable cause existed would deem it reasonable for the officers to believe that Scott (i) called the police to report his Jeep stolen just five minutes *before* driving recklessly past Officer Guzman, crashing into another vehicle, and running away; (ii) traveled two miles back to beat Officer Bloom to Scott's original location; and (iii) managed to put on a black t-shirt somewhere along the way.

9

Such findings would impermissibly draw inferences in favor of Defendants, rather than Scott. *See Keating*, 598 F.3d at 762.

Because the Complaint does not establish arguable probable cause to arrest Scott, the Complaint also does not establish arguable probable cause for Officers Williams and Hernandez to search Scott. The search cannot be characterized as incident to a lawful arrest because – at this stage in the litigation – Defendants' arrest of Scott has not been shown to be lawful. Thus, any information gained during the search, such as the color of Scott's undershirt, cannot retroactively justify the arrest and commencement of the search. *See Sibron v. New York*, 392 U.S. 40, 62–63 (1968) (finding that a search incident to arrest was unlawful where arrest lacked probable cause).

   2. Arguable Reasonable Suspicion.

Officers Hernandez and Williams argue that even if they lacked arguable probable cause to search Scott, they had "arguable reasonable suspicion" to conduct an investigatory frisk of Scott's person. When an officer asserts qualified immunity in the context of an investigatory stop-and-frisk,[4] the issue becomes "whether the officer had arguable reasonable suspicion to support an investigatory stop." *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000) (internal quotations omitted). Importantly, arguable reasonable suspicion offers qualified immunity for only an investigatory frisk – not a full search, which must be supported by arguable probable cause. *See Carter*, 821 F.3d at 1320. An investigatory frisk must be "confined in scope . . . to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29.

---

[4] An investigatory stop-and-frisk, otherwise known as a *Terry* stop, permits an officer – despite lacking probable cause – to stop and briefly pat down an individual if the officer has a reasonable, articulable suspicion that criminal activity is afoot. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968).

Here, Officers Williams and Hernandez are not entitled to qualified immunity based on arguable reasonable suspicion for two reasons. First, as with the issue of arguable probable cause, the Complaint's allegations do not establish that Officers Williams and Hernandez had arguable reasonable suspicion to believe that Scott was involved in criminal activity. Rather, the Complaint alleges that Scott was with Officer Bloom while Officer Guzman was pursuing the stolen Jeep two miles away. Compl. ¶ 30. Taking this allegation as true, there is no reasonable ground to suspect that Scott was the driver of the Jeep – Scott could not have been in two places at once. Officer Williams summarily states that because Scott "called dispatch and requested the Officers to arrive to his location," the officers had arguable reasonable suspicion to conduct an investigatory frisk. *See* City Mot. at 8. The Court rejects such a contention; merely calling the police to report one's car as stolen does not automatically give rise to a purportedly reasonable inference that the caller is engaged in criminal activity.

Second, the Complaint does not establish that Officers Williams and Hernandez properly limited the scope of their investigatory frisk. The Complaint alleges that Officers Williams and Hernandez removed Scott's wallet and personal belongings. Compl. ¶ 17. The Complaint also suggests that the officers lifted up Scott's black t-shirt such that his white undershirt was exposed. *Id.* ¶ 16. All of this happened while Officer Carriel had his taser out, ready to use on Scott. *See id.* Drawing reasonable inferences in favor of Scott, the Complaint does not establish that Officers Williams and Hernandez limited their search to a pat-down of Scott's clothing for the purpose of finding weapons. Rather, the Complaint indicates that the officers conducted a full search of Scott's person after he had been arrested. Thus, the Court must accept that Officers Williams and Hernandez conducted a full search under the Fourth Amendment, for which arguable reasonable suspicion – even if it had been established – would not provide qualified immunity.

In sum, the Complaint's allegations do not establish arguable probable cause to arrest or search Scott. Similarly, the Complaint does not establish arguable reasonable suspicion justifying an investigatory frisk, nor does the Complaint establish that Officers Williams and Hernandez limited themselves to an investigatory frisk. This lack of probable cause and reasonable suspicion precludes the officers' request for dismissal on qualified immunity.[5] Consequently, Scott's federal claims (Counts One and Two) must be allowed to proceed.

C. <u>Sovereign Immunity.</u>

Florida law provides police officers with immunity from personal tort liability unless the officers "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Therefore, to withstand a motion to dismiss, a plaintiff must plead "allegations which, if true, would permit a reasonable trier of fact to find that the deputy acted 'in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights [or] safety,' as those phrases are used in section 768.28(9)(a)." *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. 4th DCA 2020) (quoting Fla. Stat. § 768.28(9)(a)). "Malicious purpose" has been interpreted as acting with "the subjective intent to do wrong." *Peterson*, 290 So. 3d at 109. "Wanton and willful disregard of human rights, safety, or property" has been interpreted to mean "conduct much more reprehensible and unacceptable than mere intentional conduct." *Id.*

Each Motion makes the same argument regarding the sovereign immunity defense: the Complaint lacks specific allegations showing that the officers acted with malice or in bad faith.

---

[5] The Court reiterates that its findings on arguable probable cause and arguable reasonable suspicion are driven by the procedural posture of this case. On a fuller record, the Court may be able to more precisely decide the inherently fact-heavy question of probable cause. But at this stage, where the Complaint's allegations are accepted as true, probable cause is not so decidedly established to warrant dismissal on qualified immunity grounds.

*See* Hernandez Mot. at 18; City Mot. at 9. This is simply not true. Several allegations in the Complaint would permit a reasonable trier of fact to find that the officers acted in bad faith or maliciously. *E.g.*, Compl. ¶ 17 (alleging Officer Guzman was motivated by Scott's race); ¶ 18 (alleging the officers charged Scott with possession of marijuana and an unlicensed weapon, despite Scott possessing neither at the time of his arrest); ¶ 30 (alleging Scott was with Officer Bloom during Officer Guzman's car chase two miles away); ¶ 53 (alleging Officers Guzman and Bloom initiated a criminal prosecution of Scott, despite lacking evidence, and refused to investigate evidence that would clearly exonerate Scott). These allegations, taken as true, "would be sufficient for a reasonable trier of fact to conclude that the [officers] acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights or safety." *See Peterson*, 290 So. 3d at 114 (internal quotations and alteration omitted). Thus, dismissal would be improper.

To summarize, Defendants are not entitled to immunity under Florida law because the Complaint alleges enough for a jury to reasonably find that the officers acted with malice or in bad faith when they arrested, incarcerated, and prosecuted Scott. Accordingly, Scott's state claims (Counts Three through Five) survive the motions to dismiss.

## IV. CONCLUSION

Taking the well-pled factual allegations as true, it is not "beyond doubt" that Scott will fail to prove that he is entitled to relief. *See Lopez*, 129 F.3d at 1189. The Complaint is not a shotgun pleading, and establishes neither federal qualified immunity nor state sovereign immunity for Defendants. For those reasons, the Motions [ECF Nos. 26, 27] are **DENIED**. Defendants shall have up to and including September 27, 2022, to file their Answer(s) to the Complaint.

**DONE AND ORDERED** in Miami, Florida on September 12, 2022.

                                                  Paul C. Huck
                                                  UNITED STATES DISTRICT JUDGE

Copies furnished to:
Honorable Jacqueline Becerra
Counsel of Record