UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  21-cv-23995-HUCK/Becerra

SAMUEL SCOTT JR.,

    Plaintiff,

vs.

CITY OF MIAMI, a
Political subdivision of the
State of Florida, JONATHAN
GUZMAN, MICHAEL BLOOM,
BRANDON WILLIAMS,
MIGUEL HERNANDEZ and
RANDY CARRIEL, sued in their
individual capacity,

    Defendants.
_____/

## DEFENDANTS' JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

Defendants, CITY OF MIAMI, JONATHAN GUZMAN, MICHAEL BLOOM, BRANDON WILLIAMS, MIGUEL HERNANDEZ, and RANDY CARRIEL, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56, S.D. Fla. L.R. 56.1, and this Court's Orders [ECF Nos. 6, 22], hereby file this Joint Statement of Undisputed Material Facts in support of their Motion for Summary Judgment and Incorporated Memorandum of Law and state:

### *Officer Guzman Pursuit of Plaintiff's Car*

1. In the late afternoon on June 1, 2018, Officer Guzman was conducting a radar detail at NW 12th Avenue and NW 67th Street. Officer Guzman deposition dated December 28, 2022 (hereinafter "Guzman depo."), p. 235/ln.13-23.

---

[1] ECF No. 56, Defendant's Notice of Filing in Support of Motion for Summary Judgment, includes each record citation. Defendant reserves the right to amend this and aforementioned notice upon the availability of transcripts.

2. Officer Guzman positioned his marked Ford Taurus[2] behind and to the right of the tree in the grassy median closest to the curb, facing northbound. Guzman depo., p.146/ln.13 – p.148/ln.14; Defendant's Exhibit 1, Guzman depo., p. 144/ln.16-24.

3. Approaching him almost head-on, Officer Guzman "clocked" a black Jeep Compass with a clear-tinted windshield traveling southbound at approximately 50 miles per hour in a 30 miles per hour zone and was able to look into the vehicle through the windshield from when it was 30 feet away until it passed Guzman directly to his right. Guzman depo., p. 48/ln.6-17; p.146/ln.13 – p.149/ln.3; p.125/ln.11-18; Pl. depo., p.70/ln.15-23.

4. Since there was nothing obstructing Guzman's view inside the Jeep Compass and his close proximity to the curb, Officer Guzman observed an occupant he described as a heavyset, bald, black male with a with a white tank top, who he later believed to be the Plaintiff, driving the Jeep Compass. Guzman depo., p.24/ln.25 – p.25/ln.20; p.147/ln.19-25; p.149/ln.3-7.

5. Based on the Arrest Form, Officer Guzman observed the Jeep Compass bearing Florida tag no. CASL84 traveling 20 miles above the speed limit at 6:05 p.m. Guzman depo., p.81/ln.3-17; Plaintiff's Exhibit 1, Guzman depo., p.75/ln.5-11.

6. Officer Guzman, coming off the median to head southbound on 12th avenue, made a U-turn to follow the black Jeep Compass. Guzman depo., p.151/ln.1-10.

7. While Officer Guzman was in pursuit of the vehicle, which was still going approximately 50 miles per hour through a residential neighborhood, it failed to stop at two stop signs. Guzman depo., p.152/ln.2 – p.154/ln.23.

8. After observing the vehicle proceed through the second stop sign without stopping, making a left turn onto 10th avenue, Officer Guzman turned on his light and sirens. Guzman depo., p.154/ln.1-20.

9. Officer Guzman continued to pursue the Jeep Compass, which had picked up speed, observing further infractions such as an additional failure to stop at a third stop sign, failure to stop at a red light, and failure to use turn signals. Guzman depo., p.154/ln.24-25; p.158/ln.1 – p.162/ln.17; p. 194/ln.3-16.

---

[2] The windshield of Officer Guzman's vehicle did not have any window tint. Guzman depo., p.147/ln.9 – p.148/ln.17.

10.     After making a left at the intersection of 54th and 72nd street, the Jeep Compass collided with a burgundy F-150. Guzman depo., p.162/ln.13 – p.163/ln.25; Defendant's Exhibit 1, Guzman depo., p. 144/ln.16-24.

### *Collision and Scene of Crash*

11.     When Officer Guzman arrived at the crash site and exited his vehicle, the driver of the Jeep Compass had already exited the vehicle, and Officer Guzman observed the driver, a heavyset bald African-American male, wearing a white tank top and dark jeans, running toward a blue vehicle behind a pole, losing visual only after the individual made a right turn immediately before the blue vehicle. Guzman depo., p. 164/ln.4 – p.165/ln.25.

12.     After the driver of the vehicle fled, Officer Guzman called for a perimeter and remained at the crash scene for approximately fifteen to twenty minutes. Guzman depo., p.174/ln.24 – p.175/ln.2 & p.218/ln.16-18.

13.     Officer Guzman checked the vehicle and found a firearm, which was not encased, on the passenger floor with one magazine in the firearm, and additional ammunition in the trunk. Guzman depo., p.169/ln.11 – p.171/ln. 19.

14.     Guzman also found a MasTec identification card, matching the description of the driver, and "baggies" filled with suspected marijuana in the vehicle. Guzman depo., p.172/ln.4 – p.173/ln.21-23 & p.177/ln.17-23. Sergeant Sampson, Officer Guzman's supervisor, arrived on scene where Guzman informed him that the person depicted on the ID card matched the person he observed fleeing the scene. Sergeant Sampson deposition dated January 12, 2023 (hereinafter "Sampson depo."), p. 25/ln.23 – p.26/ln.4.

15.     While Officer Guzman was still at the crash scene, Officer Carriel arrived on scene and Officer Guzman provided him with a description of the individual he was looking for. Guzman depo., p.175/ln.3-5 & p.223/ln.17-23.

16.     While conducting inventory on the vehicle, Officers Guzman and Carriel hear a BOLO over the radio for a stolen vehicle matching the and tag number of the vehicle involved in the collision. Guzman depo., p.43/ln.10-17; p.115/ln.1-12; p.175/ln.10-13; Carriel depo., p.37/ln.2-9.

17.     Officer Guzman contacted Officer Bloom over the radio, on a channel separate from the main dispatch channel. Guzman depo., p.175/ln.18 – p.176/ln.7 & p.93/ln.2-7. Officer Bloom recalls after calling out the information for the stolen vehicle, he was told to switch to another

channel and remembers learning that other police units would arrive to his location. Bloom Depo., p.218/ln.11 – p.219/ln.1. He does not recall who he spoke with. *Id.*

18. Officers Carriel and Guzman left the scene of the crash, although in separate cars, and drove to the scene where Officer Bloom was located. Guzman depo., p.222/ln. 5-9.

19. Officer Brandon Williams also responded to the crash scene and was ultimately responsible for completing the crash report and entering the property.[3] Plaintiff's Exhibit 6, Guzman depo., p.117/ln.17-20; Defendants' Exhibit 3, Guzman Depo., p.172/ln.13-19; Guzman Depo., p.225/ln.3-5.

### *Officer Bloom Dispatched to Scene of Stolen Vehicle*

20. Before Officer Guzman learned of the same stolen vehicle, at approximately 6:30 p.m., Officer Bloom arrived at 563 NW 48th Street regarding a stolen vehicle with Florida tag CASL84. Plaintiff's Exhibit 6, Bloom depo., p. 198/ln.2-13.

21. Officer Bloom was looking for Plaintiff who at the time was wearing a dark-colored shirt with dark-colored blue jeans, and red or burgundy shoes. Pl. depo., p.81/ln.12-15. Pl. depo., p.79/ln.3-8 & p.81/ln.12-15. Officer Bloom did not observe Plaintiff, the caller of the stolen vehicle, at the location that was provided by dispatch, but then saw him on the sidewalk nearby. Bloom depo., p.26/ln.16 – p.27/ln.6; p.243/ln.18-22.

22. Officer Bloom questioned Plaintiff about the stolen vehicle. Pl. depo., p. 80/ln.10-14; Bloom depo., p.35/ln.24. According to Officer Bloom, Plaintiff advised him that he left the car running at a near-by park with the keys inside, left to visit a relative's house, and returned to the park to find his car missing, which he found odd. Bloom depo., p. 35/ln.24 – p.36/ln.14; p.217/ln.5-17. The Incident Report Search With Incident Details Report generated on the date of the incident also states that the stolen vehicle was *last seen* at NW 6th Ave/48 Street. Plaintiff's Exhibit 6, Bloom Depo., p. 198/ln.2-13; p.212/ln.15-23. The "last seen" location of 6th avenue and 48th street is a park. Defendant's Exhibit 1, Bloom depo., p.213/ln.1-7.

23. At deposition, Plaintiff could not recall at what time he left his aunt's house, called the police, or what he told the dispatcher. Pl. depo., p. 73/ln.5-15, p. 75/ln.7-9, p. 77/ln. 3-7. However,

---

[3] Officer Williams never reported to the scene of Plaintiff's arrest. Guzman depo., p.200/ln.3-9; Pl. depo., p.133/ln.10 – p.134/ln.3.

he did claim he drove at most five (5) blocks from his cousin's house to his aunt's house. Pl. depo., p.67/ln.12-17.

24. Plaintiff filled out and signed a stolen vehicle affidavit, which only took him a few minutes to do, while sitting on the curb. Pl. depo., p. 80/ln.12-20 & p.82/ln.2-19. Officer Bloom advised him the information submitted in the stolen vehicle affidavit needed to be truthful. Bloom depo., p.36/ln.8-14.

25. According to Plaintiff, he was at the scene with Officer Bloom for approximately 15 minutes prior to the arrival of any other officer. Pl. depo., p.81/ln.22 – p.82/ln.5.

### *Officers Guzman, Carriel, and Hernandez Respond to Scene of Stolen Vehicle*

26. Although all officers (excluding Williams) arrived and approached Plaintiff around the same time, Plaintiff did not recall the order in which they responded to the scene. Pl. depo., p.82/ln.22-24 & p.83/ln.8-23.

27. Officer Hernandez was dispatched and arrived to 563 NW 48th Street regarding a stolen vehicle as a back up officer with his FTO trainee. Miguel Hernandez deposition dated January 6, 2023 (hereinafter "Hernandez depo."), p. 33/ln.16 – p.34/ln.3; Plaintiff's Exhibit 1, Hernandez depo., p.28/ln.17-24.

28. At 6:45 p.m., Officers Carriel and Guzman arrive at the scene, which was approximately two (2) miles from the crash scene. Officer Carriel Body Worn Camera Footage dated 2018-06-01 beginning at T22:45:11Z[4] (hereinafter "Carriel BWC"), at T22:45:15Z; Officer Guzman Body Worn Camera Footage dated 2018-06-01 beginning at T22:45:11Z (hereinafter "Guzman BWC 1"), at T22:45:22Z; Carriel depo., p. 95/ln.25 – p.96/ln. 5.

29. Immediately, Officer Guzman tells Officer Carriel that's the guy, believing without a doubt the individual standing next to Officer Bloom's patrol vehicle to be the individual involved at the previous scene. Guzman depo., p. 182/ln.4 – p.183/ln.16 & p.185/ln.16-23; Guzman BWC 1, at T22:45:30Z.

---

[4] Zulu time zone (Z) is 4:00 hours ahead of Eastern Daylight time (EDT). EDT is from March to November. The timestamp accurately reflects the EDT as evidence when Officer Guzman's cell phone depicts the time 6:50 p.m. and the time stamps states 22:50. Guzman BWC 1, at T22:50:47Z.

30. Plaintiff is seen sitting on the curb behind Officer Bloom's patrol car. Carriel BWC at T22:45:40Z.

31. Officer Carriel tells Officer Bloom on the scene "that's him, that's the bailout," based on the Plaintiff matching the description Officer Guzman identified as the person who fled the scene. *See* Carriel BWC at T22:45:50Z; Carriel depo., p.50/ln.18 – p.51/ln.24. In response, Officer Bloom, is heard saying "that's the bail-out?"[5] Guzman BWC 1, at T22:45:53

32. At this time, Officer Hernandez, while still in his patrol SUV, had his car door open. Carriel BWC at T22:45:58Z. In fact, the video shows he can be seen lowering his window to hear what is happening, and then later with the window back up, opening the patrol door. *See* Carriel BWC at T22:45:39Z.

33. Officer Guzman asks Officer Bloom if he has the report already and whether "he signed the affidavit" to which Blooms responds "yeah, yeah, he signed." Guzman BWC 1, at T22:45:55Z.

34. Officer Guzman proceeds to call Sgt. Sampson, who was still at the first crash scene, to inform him of his observations and obtain approval. Guzman depo., p.184/ln.19 – p.185/ln. 1.

35. At approximately 6:46 p.m., Officer Hernandez is seen exiting his patrol SUV with his trainee, greets Officer Bloom and thirty seconds elapsed as they are seen inaudibly speaking and staring at Plaintiff. Carriel BWC at T22:46:12Z; Bloom depo., p. 223/ln.9-19.

36. Simultaneously, Officer Guzman again calls Sgt. Sampson using his cell phone and states "Sarge, that's your boy…he signed the affidavit already." Guzman BWC 1, at T22:46:40Z.

37. Once Officer Guzman arrived at the scene of the arrest, all of the officers were aware that he believed he had probable cause for the arrest of Plaintiff since he identified the individual at that scene as the same person who had committed crimes in front of him. Guzman depo., p.204/ln.19 – p.205/ln.5; p. 205/ln.17-206/ln.8; Hernandez depo., p. 53/ln.15-24. All of the officers on scene became aware that Officer Guzman had identified the individual who was driving the car that fled from him as the Plaintiff. Hernandez depo., p. 35/ln.13-19; p. 55/ln. 1-12; Carriel depo. at p. 146/ln.20-25; Bloom depo., p.223/ln.21 – p.224/ln.18; p.234/ln.20 – p.235/ln.1. They all believed probable cause existed for the Plaintiff's arrest. *Id.*[6]

---

[5] A "bail-out" means when someone crashes or stops the vehicle and now goes on foot. *See* Carriel depo. at p.167/ln. 17-19.

[6] Officer Guzman confirmed at deposition, that he believed he had probable cause for the arrest of Plaintiff who was claiming his vehicle was stolen upon arriving on scene and identifying him as the person who fled. Guzman depo., p. 202/ln.12-21.

38.     When Officer Hernandez learned the Plaintiff was identified as the "bail-out" who fled from the police, he gestures for Plaintiff to approach him. Carriel BWC at T22:46:59Z; Hernandez depo., p.51/ln.12-23.

39.     Upon instruction, Plaintiff removed his own belongings from his person, and placed them on the back of Officer Bloom's patrol car. Pl. depo., p. 155/ln.6-17.

40.     Plaintiff then places his hands on the back of Officer Bloom's car, and Officer Hernandez places the tips of his fingers of his left hand on Plaintiff's back while carrying out a conversation with him. Carriel BWC at T22:47:13Z; Guzman BWC 1, at T22:47:22Z.

41.     Officer Hernandez instructs him to put his hands behind his back and places his right hand on Plaintiff's right wrist and reaches behind him with his left hand. Guzman BWC 1, at T22:47:21Z; Carriel BWC at T22:47:21Z.

42.     Immediately and before Officer Hernandez could remove the handcuffs from his belt, Officer Guzman instructs Officer Hernandez to standby. Guzman BWC 1, at T22:47:24Z; Hernandez depo., p.95/ln.17-20.

43.     Officer Guzman further states "he is being detained right now but QRX" as Officer Carriel proclaims, "detain him, detain him". Guzman BWC 1, at T22:47:29Z; Carriel BWC at T22:47:29Z.

44.     Officer Guzman instructed Officer Hernandez to slow down because it was his scene and he needed to ensure everything, including the charges, were "squared away" with his sergeant before they proceed. Guzman depo., p.202/ln.7-10 & p.203/ln.3-11.

45.     Officer Hernandez did not make the arrest or place handcuffs on the Plaintiff. Guzman depo., p.207/ln.1-13 & p.208/ln.22-25; Hernnadez depo., p.95/ln.8-20; p. 54/ln.4-14.

46.     Officer Hernandez places Plaintiff's wallet on Bloom's patrol car then proceeds to look through wallet as they engage in a discussion based on the contents, presumably about the identification presented. Carriel BWC at T22:47:39Z; Hernandez depo., p.56/ln.6-11; p.65/ln.10-16; p.101/ln.23 – p.102/ln.3. Officer Bloom recalls a discussion about the types and number of identifications presented by Plaintiff. Bloom depo., p.226/ln.14 – p.227/ln.9.

47.     Officer Carriel tells Officer Guzman "tiene camisa de blanca debajo…con eso no mas".[7] Carriel BWC at T22:47:50Z.

---

[7] Based on a translation using Google from Spanish to English, it means: "He has a white shirt underneath, with that no more".

48. Officer Guzman asks his sergeant to "check with the guy…at the body shop if he has cameras outside," but the dealership did not have any. Guzman BWC 1, at T22:48:58Z; Guzman depo., p.239/ln.16-22.

49. Plaintiff was asked, although he does not recall by which officer, if there was anything in his pockets that would stick them. Pl. depo., p.89/ln.15-19.

50. Officer Bloom states "I just want to pat you down okay" to which Plaintiff responded "okay." Carriel BWC at T22:50:07Z.

51. After Plaintiff states it's okay for Officer Bloom to pat him down, Officer Hernandez checks his back right pocket and holds up shirt as Officer Bloom conducts a limited pat down. Carriel BWC at T22:50:11Z; Guzman BWC 1, at T22:50:09Z.

52. Officer Hernandez and Bloom were instructed to conduct a limited pat down to make sure he did not have any weapons in his pockets; however, Plaintiff does not recall who exactly gave such instructions. Pl. depo., p.89/ln.8 - p.90/ln.22. The pat-down was for officer safety purposes. Bloom depo., p.81/ln.9-16; p. 105/ln.6-12; p.113/ln.10-20; Hernandez depo., p.138/ln.9-17; p.61/ln.4-13; p.66/ln.2-6; Guzman depo., p.201/ln.18-23.

53. During the pat-down, Plaintiff's white ribbed wifebeater undershirt is clearly seen. Pl. depo., p.90/ln.21 – p.91/16; Guzman BWC 1, at T22:50:18Z.

54. Not long after the pat-down, Officer Guzman advised Plaintiff he was being detained. Pl. depo., p.96/ln.12-19.

55. Plaintiff was excessively sweating on the scene. Guzman depo., p.176/ln.10-13; Defendant's Exhibit 6, Guzman depo. Both the black shirt and the white undershirt were soaked in sweat. Guzman depo., p.188/ln.13-21.

56. Officer Carriel asks Plaintiff why he is sweating a lot to which Plaintiff advises he "is on testosterone." Carriel BWC at T22:50:46Z. Officer Carriel thought Plaintiff ran from the crash scene since it was only 2 miles away from where the police responded to the call about the stolen vehicle. Carriel depo., p. 95/ln 1-4.

---

https://translate.google.com/?sl=auto&tl=en&text=tiene%20camisa%20de%20blanca%20debajo%E2%80%A6con%20eso%20no%20mas&op=translate.
Officer Carriel translated it as "he is wearing a white short underneath…that is it." Carriel depo., p.83/ln.19 – p.84/ln.19.

57. Officer Carriel states "si tu lo puede ver y es el, no hay que perar a nada[8]". Carriel BWC at T22:51:11Z.

58. Officer Guzman tells Sgt. Sampson "Yeah that's him… Sarge, he's sweating, he has a black shirt on top of the tank top shirt that he had when he was driving; QRU all the way." Guzman BWC 1, at T22:51:25Z.

*Plaintiff Handcuffed at Scene of Alleged Stolen Vehicle*

59. After confirming his observations with Sgt. Sampson, Officer Guzman instructs Plaintiff to put his hands behind his back and proceeds to handcuff Plaintiff. Guzman BWC 1, at T22:52:36Z; Carriel BWC at T22:52:41Z; Pl. depo., p.96/ln.2-25.

60. Plaintiff asks whether he is being arrested, to which Officer Guzman responds "detained right now"; Plaintiff further asks why he is being detained and Guzman replies "I'm going to explain it to you in a minute." Guzman BWC 1, at T22:52:42Z.

61. Officer Guzman asks "where is your ID" to which Plaintiff responds "right there" while gesturing at his belonging on the back of Officer Bloom's patrol car. Carriel BWC at T22:53:13Z.

62. After Plaintiff vocalized concern of his kids, Officer Guzman asks "where are your kids" and Plaintiff states "I was with them…they are over at my cousin's house on 51st and 7th". Carriel BWC at T22:53:21Z.

63. Officer Guzman asks "when" and Plaintiff states on the video "I have been over there since…at least…I wanna say 5:30, 6:00 o'clock. I actually *walked* back over here." Carriel BWC at T22:53:33Z.

64. In fact, Plaintiff gave multiple explanations for where he was prior to arriving at the arrest location. Plaintiff told Officer Carriel that his car was stolen in Miami Garden, but he got nervous, got on a bus, and called 911 from Model City. Carriel depo., p.56/ln.9-15. He told Officer Guzman that he was with his kids, that he was at work, and that he dropped off his kids to say hi. Guzman

---

[8] Google Translation from Spanish to English is "If you can see it and it's him, you don't have to wait for anything."
https://translate.google.com/?sl=auto&tl=en&text=si%20tu%20lo%20puede%20ver%20y%20es%20el%2C%20no%20hay%20que%20perar%20a%20nada&op=translate

BWC 2, at Z22:59:45; Guzman depo., p.57/ln.6-11. Plaintiff told Officer Bloom that he called 911 to report his stolen vehicle from a nearby park. Bloom depo., p.217/ln.5-14. [9]

*Plaintiff Placed in Police Vehicle*

65. Officer Guzman takes Plaintiff's two IDs, phone, and wallet. Carriel BWC at T22:53:45Z.

66. Officer Guzman states "you are being detained. When we get the story together, I'll let you know what's up." Carriel BWC at T22:53:54Z.

67. Officer Guzman asks Hernandez "do you mind if I sit him in your car, it's a bigger space" and Officer Hernandez gestures his approval with his hand. Guzman BWC 1, at T22:54:00Z; Carriel BWC at T22:54:03Z.

68. At 6:54 p.m., Plaintiff is placed in the back of Officer Hernandez's patrol SUV. Guzman BWC 1, at T22:54:17Z; Pl. depo., p. 103/ln.5-13.

69. Plaintiff states he could not call the police from his prior location and could not provide Officer Guzman with the exact address of the house where he was prior to meeting Officer Bloom, where his kids are. Guzman BWC 1, at T22:54:33Z; Guzman depo., p.58/ln.9-23 & p.230/ln.23 – p.231/ln.13.Officer Guzman returns to Officer Hernandez's SUV, tells Plaintiff he is going to read him his rights, and informs him that he matched the description of the guy that "took off" in his car. Officer Guzman Body Camera Footage dated 2018-06-01 beginning at T22:58:59Z (hereinafter "Guzman BWC 2"), at T22:59:36Z.

70. Plaintiff after stating he walked from his cousin's house, next tells Officer Guzman that his car was probably stolen around 5 and that he "dropped off kids…came over to say hi… somebody jumped in and drove off." Guzman BWC 2, at T23:00:13Z.

71. Plaintiff further tells Officer Guzman that he had never been arrested. Guzman BWC 2, at T23:01:28Z; Pl. depo., p.97/ln.12-13. However, prior to June 1, 2018, Plaintiff was given a notice

---

[9] Plaintiff now states at his deposition about 4 ½ years later another version different from what is said by him on video, what is documented by the dispatcher regarding the vehicle, or testified to by the officers. At approximately 5:00 p.m., leaving his kids at his cousin Emily Johnson's house, he, without prior notice, stopped at his aunt Erin Bryant's house to visit with his cousin Dean Wanlis to catch up and attempt to sell him a laptop. Pl. depo., p.52/ln.18-20, 55/ln.18-19, p. 57/ln. 11-15, p. 58/ln.13-18, p. 59/ln.6-8, Pl. depo., p.60/ln. 15-20, and p. 61/ln. 14-16. Plaintiff parked his car on the street right in front of his aunt's house and left his car running with the keys inside. Pl. depo., p. 52 / ln.18-20, p.56/ln.20 – p.57/ln.8, p.58-59/ln. 19-25, 1-5; Pl. depo., p. 139/ln.6-12; Approximately 10 minutes later, Plaintiff noticed his car was gone, walked up and down the street searching for his car, and called the police. Pl. depo., p. 52/ln. 18-22, p. 75/ln.5-19.

to appear and charges were brought against him as a result of allowing an individual with a suspended license to drive his car in Baker County, Macclenny, Florida. Pl. depo., p.98/ln.1 – p.101/ln.19.

72. Although not captured on video because Officer Hernandez did not have a body-worn camera issued, Plaintiff was transported from the scene to the substation in his vehicle with no incident. Pl. depo., p. 103/ln.18 – p.104/ln.5; Guzman depo., p.69/ln.2-12.

*Plaintiff Transported to Police Stations*

73. At the substation, Plaintiff remained quiet and did not speak with any of the officers. Pl. depo., p.106/ln.1-7.

74. At 7:28 p.m., Officer Guzman arrives at police station, where Plaintiff is seated in room with Officers Hernandez, Carriel (male), and Carriel (female), and reads Plaintiff his Miranda rights. Officer Guzman Body Worn Camera Footage dated 2018-06-01 beginning at T23:28:10Z (hereinafter "Guzman BWC 4"), at T23:28:30Z.

75. At 7:30 p.m., Officer Guzman transports him to the downtown office to speak with Detective Martinez. Guzman BWC 4, at T23:29:12Z; Pl. depo., p.105/ln.18-22.

76. Officers Carriel, Williams, and Guzman were present at the second police station. Pl. depo., p.107/ln.3-10. After sitting in the holding tank for some time, Plaintiff was transported to Turner Guilford Knight Correctional Center (TGK) and was not released until midnight the following evening. Pl. depo., p. 109/ln.22 – p.110/ln.2 & Pl. depo., p.110/ln.3-9.

*Charges*

77. Plaintiff was charged with (1) leaving the scene of an accident/property damage; (2) false report of commission of a crime; (3) firearm/weapon/concealed/fail to carry license; (4) cannabis/possession/20 grams or less: marijuana; and (5) reckless driving/ damage to property or person. *See* Guzman depo. Exhibit 1, p. 75/ln.5-11. According to the Property Receipt, Officer Williams entered into evidence a firearm, firearm accessories, ammo-live, narcotics and documents. Defendant's Exhibit 3; Guzman depo., p.172/ln.13-19; p. 225/ln.3-5.

78. The Plaintiff's bond for these charges was fixed by a Judge at $5,000.00, and Plaintiff had to hire a defense attorney to defend him in the criminal proceeding by the State Attorney who ultimately dropped all charges. ECF No. 1 at 20-21.

79. During the criminal case, Officer Guzman only talked to the State Attorney at the criminal courthouse only when he was notified by the Police Department that he was required to appear for

court and otherwise had no other communication with the State Attorney. Guzman depo., p.195/ln. 3-25.

80.     Officer Bloom did not communicate with the State Attorney's Office during the criminal case either. Bloom depo., p. 236/ln.3-18.

I HEREBY CERTIFY that on this 24th day of January, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> MARRERO & WYDLER
> *Counsel for Defendant Hernandez*
> 2600 Douglas Road, PH-4
> Coral Gables, FL 33134
> (305) 446-5528
> (305) 446-0995 (fax)
>
> By: /s/ Lourdes E. Wydler
> OSCAR E. MARRERO
> Florida Bar Number: 372714
> oem@marrerolegal.com
> LOURDES ESPINO WYDLER
> Florida Bar Number: 719811
> lew@marrerolegal.com
> LAUREN D. MARTIN
> Florida Bar Number: 1034166
> ldm@marrerolegal.com

**SERVICE LIST**

Faudlin Pierre, Esq.
Florida Bar No: 56770
Fplaw08@yahoo.com
PIERRE SIMON
60 S.W. 4th Avenue
Ft. Lauderdale, FL 33315
(305) 336-9193
*Counsel for Plaintiff.*

Brandon Fernandez, Esquire
Florida Bar No: 1002969
BFernandez@miamigov.com
Bryan Capdevila, Esquire
Florida Bar No: 119286
Office of the City Attorney
City of Miami
444 S.W. 2nd Avenue, 9th Floor
Miami, FL 33130-1910
BCapdevila@miamigov.com
(305) 416-1800
(305) 400-5071 (fax)
Deborah Bailey, Legal Assistant
dbailey@miamigov.com
SMFernandez@miamigov.com
*Counsel for Defendants, City of Miami, Guzman, Bloom, Williams, and Carriel.*