UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  21-cv-23995-HUCK/Becerra

SAMUEL SCOTT JR.,

      Plaintiff,

vs.

CITY OF MIAMI, a
Political subdivision of the
State of Florida, JONATHAN
GUZMAN, MICHAEL BLOOM,
BRANDON WILLIAMS,
MIGUEL HERNANDEZ and
RANDY CARRIEL, sued in their
individual capacity,

      Defendants.

_____/

## DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants, CITY OF MIAMI, JONATHON GUZMAN, MICHAEL BLOOM, BRANDON WILLIAMS[1], MIGUEL HERNANDEZ, and RANDY CARRIEL by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rule 56.1, hereby file this Motion for Summary Judgment and Incorporated Memorandum of Law, and state:

1.     This is a purported civil rights action arising from Plaintiff's arrest on June 1, 2018. Plaintiff alleges five (5) causes of action: (1) unlawful seizure[2] under 42 U.S.C. § 1983 against

---

[1] A stipulation and notice of dismissal was filed for Brandon Williams and pending the Court's Order of Dismissal. ECF. No. 54.

[2] There is no material distinction between claims for false arrest or unlawful seizure, since Plaintiff's unlawful seizure claim is based on the arrest, not on any alleged seizure prior to the arrest. ECF No. 1 at ¶ 24-27. As such, case law on false arrest claims apply to claims of unlawful seizure. *See Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1409 (S.D. Fla. 2014) (plaintiff brought a Fourth Amendment unlawful seizure claim based on false arrest and the Court construed it as a false arrest claim under Section 1983).

Guzman, Bloom, Williams, Carriel, and Hernandez; (2) unlawful search under 42 U.S.C. § 1983 against Williams and Hernandez; (3) false imprisonment / false arrest under state law against Guzman, Bloom, Williams, Carriel, and Hernandez; (4) false imprisonment / false arrest under state law against the City of Miami; and (5) malicious prosecution under state law against Guzman and Bloom. Defendants are entitled to summary judgment on all of Plaintiff's claims because probable cause existed. The majority of the interaction with Plaintiff was recorded by the Officers' Body Worn Camera. Summary judgment should be granted on all claims because the Defendants are entitled to qualified and statutory immunity as a matter of law.

2.      On June 1, 2018, while Officer Guzman was conducting a radar detail, he observed a black Jeep Compass, with clear windows, traveling 50 miles per hour in a 30 miles per hour zone. Given Guzman's close proximity to the curb, he was able to look inside the vehicle through its windshield and see a heavyset, bald, black male wearing a white tank top driving the Jeep Compass. Guzman gave pursuit to the black Jeep Compass, observing further traffic violations. Ultimately, the Jeep Compass collided with a F-150 on 5th Court between 71st and 72nd Street (hereinafter "Crash Scene"), and Officer Guzman observed the driver flee the scene.

3.      At some point later, Officers Guzman and Carriel, who responded to Guzman's call for a perimeter, heard a BOLO for the tag number of the black Jeep Compass. Upon arrival to the dispatch location for the stolen vehicle, Officer Guzman positively identified Plaintiff as the fleeing suspect and announced it on scene. Despite the existence of probable cause, rather than arrest Plaintiff, Officer Guzman chose to investigate further and confirm his observations with his sergeant prior to Plaintiff's arrest.

4.      The existence of actual probable cause bars each of Plaintiff's claims. *See Whittington v. Town of Surfside*, 490 F. Supp. 2d 1239, 1249 (S.D. Fla. 2007) *aff'd in part,* 269 Fed. Appx. 918 (11th Cir. 2008). Probable cause is established because Officer Guzman positively identified Plaintiff as the fleeing suspect, and Officers Bloom, Hernandez, and Carriel are entitled to rely on Officer's Guzman's identification as support for probable cause in accordance with *Vickers* and the fellow officer rule. *Vickers v. Georgia*, 567 Fed. Appx. 744, 747 (11th Cir. 2014).

5.      Probable cause existed to arrest Plaintiff for violations of Florida statutes prohibiting leaving a scene of a crash involving damage to vehicle or property, falsely reporting commission of a crime, reckless driving, and for failure to stop at steady red signal. *See* Fla. Stat. §§ 316.061(1); 817.49; 316.192(3); and 316.075(1)(C). Officer Guzman observed a black Jeep Compass speeding

20 miles over the speed limit, failing to stop at steady red signals, and colliding with another vehicle. He then observed the driver of the black Jeep Compass fleeing the crash scene. Upon arrival at the scene where plaintiff reported the vehicle as stolen and signing a stolen vehicle affidavit, Guzman positively identified Plaintiff as the fleeing suspect. Moreover, a firearm, which Plaintiff admitted to ownership of and lack of license to carry, as well as small bags of marijuana were found in the black Jeep Compass, thereby establishing probable cause, or at the very least arguable probable cause, for possession of 20 grams or less of cannabis and violation of license to carry concealed weapon under Fla. Stat. §§ 893.13(6)(B) and 790.06. The officers would have also had probable cause under Fla. Stat. § 843.02 for obstructing the investigation, and fleeing and alluding under Fla. Stat. 316.1935, even though he was not charged with those offenses.

6.      Officers Guzman, Hernandez, Carriel and Bloom would be entitled to qualified immunity from a Fourth Amendment claim, since an officer need not have actual probable cause, but only "arguable probable cause" to make an arrest. *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003); *Knight v. Jacobson*, 300 F.3d 1272, 1274 (11th Cir. 2002). Given they relied on the information from a fellow officer about the Crash Scene in close proximity to where Plaintiff was located, arguable probable cause existed for Plaintiff's arrest upon Guzman's arrival and immediate identification of Plaintiff as the fleeing suspect under the totality of the circumstances barring the federal unreasonable seizure and search claims. Even if the Officers were reasonably mistaken in believing the Plaintiff was the person identified who fled the scene, qualified immunity would still apply. *Benjamin v. City of Miami*, 14-22800-Civ-COOKE, 2015 WL 1043671 (S.D. Fla. March 10, 2015)(dismissing with prejudice claim against officer based on probable cause where Plaintiff was found near the crime and matched general description of assailant).

6.      There is no evidence that as of June 1, 2018, Defendants actions in seizing, searching, and arresting Plaintiff violated any clearly established statutory or constitutional right of which a reasonable person would have known under the circumstances. *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir. 1993) *modified,* 14 F.3d 583 (11th Cir. 1994). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* at 1557.

7.      Qualified immunity also shields Officers on all actions taken prior to the arrest. To the extent the detention prior to the arrest transformed into a seizure, only reasonable suspicion or arguable reasonable suspicion was required for the search of his person even if the Defendant

officers only observed legal activity. *See Moreno v. Turner*, 572 Fed. Appx. 852, 853 (11th Cir. 2014)(affirming dismissal of 1983 unlawful search and seizure claim based on officers entitlement to qualified immunity where officer had plaintiff place his hands on patrol car and frisked him seizing personal items including wallet and where plaintiff's factual allegations were too vague and conclusory). Officer Hernandez only needed, at a minimum, arguable reasonable suspicion to briefly seize the Plaintiff for purposes of a search of Plaintiff's person due to the nature of the potential crime committed. *Jackson v. Sauls,* 206 F.3d 1156, 1164 (11th Cir. 2000). Officer Carriel had arguable reasonable suspicion that Plaintiff would attempt to flee, justifying brandish of his Taser, based on his previous attempt to flee.

8.      Next, as can be seen in the body worn camera footage, Plaintiff's actions constituted voluntary consent, making the search valid and not giving rise to liability under § 1983 for an unreasonable search. *United States v. Chrispin*, 181 Fed. Appx. 935, 938 (11th Cir. 2006) (citing *United States v. Kapperman*, 764 F.2d 786, 793 (11th Cir. 1985).

9.      Plaintiff's state law tort for false arrest/imprisonment must be dismissed as Officers are entitled to sovereign immunity pursuant to Florida Statute § 768.28(9)(a). Section 768.28(9)(a) provides officers with immunity from suit and attaches a presumption of good faith to an officer's actions, unless it is shown that the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights." Absent from the record is any evidence demonstrating that the Officers acted in bad faith or with malicious purpose or willful disregard when detaining, searching, and arresting Plaintiff.

10.     Finally, malicious prosecution is barred because of the existence of probable cause, the lack of malice by Officer Guzman and Bloom, and because Officer Guzman and Bloom were not the legal cause of Plaintiff's prosecution. *Williams v. Miami-Dade Police Dep't,* 297 F. App'x 941, 947 (11th Cir. 2008); *Eubanks v. Gerwen,* 40 F.3d 1157, 1160–61 (11th Cir. 1994); *Ermini v. Scott*, 249 F. Supp. 3d 1253, 1277-78 (Fla. M.D. 2017).

## MEMORANDUM OF LAW

### Standard of Review

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to

any material fact, as a complete failure of proof concerning even just one essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id*. at 322-23.

The movant bears the initial responsibility of asserting the basis for the motion. *Id*. at 323. The nonmoving party is then required to present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (*quoting* Fed. R. Civ. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the nonmovant's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Moreover, the courts at summary judgment are further required to view the facts in the light depicted by video footage where there is no contention that a video fails to depict what actually happened. *Scott v. Harris,* 550 U.S. 372, 378-81 (2007); *see also Beshers v. Harrison*, 495 F.3d 1260, 1262 (11th Cir. 2007) (refusing to consider those facts put forward by the plaintiff that were clearly discredited by video footage); *Singletary v. Vargas*, 804 F.3d 1174, 1183 (11th Cir. 2015) (same). Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.

The doctrine of qualified immunity allows public officials to carry out discretionary duties without the chilling fear of personal liability or harassment of litigation. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). It thus protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). An officer is entitled to qualified immunity while performing discretionary functions when his conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir. 1993) *modified,* 14 F.3d 583 (11th Cir. 1994) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

The Plaintiff bears the burden of proving that, when the officers acted, the law established the contours of the right so clearly that a reasonable official would have understood his acts were unlawful. *Post*, 7 F.3d at 1557 (citing *Anderson*, 483 U.S. at 640); *see also Foy v. Holston*, 94 F.3d

5

1528, 1532 (11th Cir. 1996). Meeting this burden requires reliance on more than "general, conclusory allegations or broad legal truisms" because "the line between lawful and unlawful conduct is often vague" and the clearly established standard "demands that a bright line be crossed." *Post*, 7 F.3d at 1557 (citing *Harlow*, 457 U.S. 800; *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989)) (internal quotations omitted); *see also Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post*, 7 F.3d at 1557 (citing *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1323 (11th Cir. 1989)).

I.    **ALL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL PLAINTIFF'S CLAIMS BECAUSE ACTUAL PROBABLE CAUSE EXISTED FROM THE MOMENT OFFICER GUZMAN ARRIVED ON SCENE AT THE LOCATION OF THE ALLEGED STOLEN VEHICLE AND POSITIVELY IDENTIFIED PLAINTIFF AS THE FLEEING SUSPECT.[3]**

All Defendants' actions relative to the alleged unlawful seizure, arrest, and search were supported by actual probable cause. The existence of probable cause bars Plaintiff's § 1983 unlawful seizure claim; § 1983 unlawful search claim; state law unlawful search claim against both the Defendant Officers and the City of Miami; and state law malicious prosecution claim.

A.    **ACTUAL PROBABLE CAUSE EXISTED AT THE TIME GUZMAN ARRIVED ON SCENE AND POSITIVELY IDENTIFIED PLAINTIFF AS THE FLEEING SUSPECT.**

While it is well-established that a warrantless arrest without probable cause violates the Fourth Amendment, the existence of probable cause is an absolute bar on Fourth Amendment claims. *Whittington v. Town of Surfside*, 490 F. Supp. 2d 1239, 1249 (S.D. Fla. 2007) *aff'd in part,* 269 Fed. Appx. 918 (11th Cir. 2008) (citing *Marx v. Gumbinner,* 905 F.2d 1503, 1505-06 (11th Cir. 1990)). An arrest is supported by probable cause if "the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville*, Alabama, 608 F.3d 724, 734 (11th Cir. 2010). Under the Fourth Amendment, constitutional claims are governed by a standard of objective reasonableness. *Lee*, 284 F.3d at 1195 (for probable cause to exist, arrest must be objectively reasonable under a totality of the circumstances).

---

[3] "Florida and federal law have the same standard for determining whether probable cause exists." *Williams v. Miami-Dade Police Dept.*, 297 Fed. Appx. 941, 945 (11th Cir. 2008).

"Under Florida law, false arrest and false imprisonment/detention are 'different labels for the same cause of action.'" *Whittington*, 490 F. Supp. 2d at 1256 *aff'd in part,* 269 Fed. Appx. 918 (11th Cir. 2008). Just like a claim of false arrest and imprisonment under 42 U.S.C. § 1983, probable cause is an absolute bar to a false arrest and imprisonment claim under Florida law. *Id*. (citing *Von Stein v. Brescher*, 904 F.2d 572, 584 n. 19 (11th Cir. 1990) (noting that, in Florida, existence of probable cause disposes of, inter alia, state law claim for false arrest); *Mas v. Metro. Dade County*, 775 So.2d 1010, 1011 (Fla. 3rd DCA 2001). The courts apply the same standard to determine whether probable cause exists for both federal and state law false arrest claims. *Mills v. Town of Davie*, 48 F. Supp. 2d 1378, 1380 (S.D. Fla. 1999). Recent decisions applying Florida law have further suggested that an officer remains entitled to statutory immunity under § 768.28, Florida Statutes, should a plaintiff fail to introduce sufficient evidence suggesting the officer acted with actual malice in making an arrest without probable cause. *Eiras v. Florida*, 239 F. Supp. 3d 1331, 1345 (M.D. Fla. 2017). In *Eiras*, the court distinguished the line of case law holding that the absence of probable cause is sufficient to raise an inference of malice because those cases all address claims for malicious prosecution, which requires only legal malice to state a claim, as opposed to the standard of actual malice required to defeat an individual officer's entitlement to statutory immunity. *Id*. Absent evidence to suggest that Officer Guzman arrested him in bad faith, with a malicious purpose, or in a manner exhibiting wanton and willful disregard for his rights, safety or property, Plaintiff will not be able to overcome Officer Guzman's entitlement to statutory immunity. *Id*.

The Eleventh Circuit has made clear that an officer is entitled to rely on another officer's positive identification of a suspect as support for probable cause. *Vickers v. Georgia*, 567 Fed. Appx. 744, 747 (11th Cir. 2014). In *Vickers*, the Court held that probable cause existed, entitling officer to qualified immunity, based on another officer's positive identification of suspect as person he saw breaking into car. 567 Fed. Appx. at 747. "The collective knowledge of police investigating a crime is imputed to each member under a rule of law called the 'fellow officer rule' or 'collective knowledge rule.'" *Johnson v. State*, 660 So.2d 648, 657 (Fla. 1995). The fellow officer rule permits an officer to "rely upon his fellow officer's judgment about probable cause." *Williams v. Miami-Dade Police Dept.*, 297 Fed. Appx. 941, 946 (11th Cir. 2008). "Once probable cause is established, an officer is under no duty...to look for additional evidence which may exculpate the accused." *Swanson v. Scott*, 334 F. Supp. 3d 1203, 1217 (M.D. Fla. 2018) (citing

*Smith v. City of Fairburn, Georgia*, 679 F. App'x 916, 924 (11th Cir. 2017)). It is reasonable for officers not to conduct further investigation into the identity of the suspect where positive identification was provided by police officer. *Id.*; *Napier v. Fowler*, 09-60684-CIV, 2009 WL 10699620, at *13 (S.D. Fla. Dec. 1, 2009). A police officer is not required to accept suspect's protestation of innocence for purposes of 1983 and Florida law false arrest claims. *See Benoit v. City of Lake City, Florida*, 343 F. Supp. 3d 1219, 1234 (M.D. Fla. 2018).

To establish a false arrest claim, Plaintiff must demonstrate that the Officers lacked actual probable cause or, as discussed below, arguable probable cause as it relates to qualified immunity. Here, Officer Guzman's positive identification of Plaintiff at the crash scene as the fleeing suspect from the scene of the crash, establishes probable cause to detain, search, and arrest Plaintiff, pursuant to *Vickers*. Nothing in the record indicates that Defendants Bloom, Carriel, or Hernandez acted unreasonably in relying on Defendant Guzman's identification of Plaintiff.

The Supreme Court has identified the following factors to consider in evaluating likelihood of misidentification because of suggestive police identification procedures: (1) opportunity of witness to view criminal at time of crime; (2) witness' degree of attention; (3) accuracy of witness' prior description of the criminal; (4) level of certainty demonstrated by witness at the confrontation; and (5) the length of time between the crime and the identification. *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972). Although suggestiveness of identification is not an issue in this matter, each of these factors support a reliable identification justifying probable cause for Plaintiff's arrest.

While conducting radar detail, Officer Guzman positioned his marked Ford Taurus as close to the curb as possible in order to get an accurate reading of oncoming traffic. SMF at ¶¶ 1-4. Approaching him almost head-on, Officer Guzman "clocked" a black Jeep Compass with a clear-tinted windshield travelling southbound at approximately 50 miles per hour in a 30 miles per hour zone and was able to look into the vehicle through its windshield from when it was 30 feet away until it passed Guzman directly to his right. SMF at ¶ 3. Through its windshield, Officer Guzman observed a heavyset, bald, black male with a with a white tank top, who he later believed to be the Plaintiff, driving the Jeep Compass. SMF at ¶¶ 3-4.

Unlike the usual case with eyewitness identification by a casual or passing observer, Officer Guzman was a law enforcement officer on duty, and "as a specially trained, assigned, and experienced officer, he could be expected to pay scrupulous attention to detail, for he knew that

subsequently he would have to find and arrest [the suspect]." *Manson v. Brathwaite*, 432 U.S. 98, 115 (1977) (holding that, despite the suggestive nature of the single-photo identification procedure, the totality of the circumstances did not show a substantial likelihood of irreparable misidentification where the police officer who made the identification was trained, had a sufficient opportunity to view the suspect, accurately described him, positively identified his photograph, and made the photographic identification only two days after the crime). The cases in this Circuit, lend significance to training as a police officer for identification purposes. *See United States v. Willis*, 759 F.2d 1486, 1495 (11th Cir. 1985) (finding experienced airport employee's identification of defendant as man who filled out fuel order for plane involved in suspected criminal activity approximately 30 minutes after his first encounter with defendant established probable cause for arrest). Officer Guzman believed without a doubt that the individual reporting the alleged stolen vehicle was the fleeing suspect from the Crash Scene. SMF at ¶ 29. This is supported by the body worn camera footage where Guzman can be heard telling his sergeant "that's your boy" and "that's him". SMF at ¶¶ 36, 58. Officer Carriel, with that knowledge is also heard saying "that's the bailout" SMF at ¶31.

Plaintiff contends that the fact that he "was a black man in a predominately black neighborhood did not give probable cause for arrest for any crime…where Defendants did not have a specific description of the suspect." ECF No. 1 at ¶ 25. Although descriptions that are exceedingly vague are insufficient to create probable cause, here, probable cause is established by Guzman's positive identification of the Plaintiff, not by the fact that Plaintiff matched the general description of the crime suspect, which was heavyset, bald, black, male wearing a white tank top and dark jeans. SMF at ¶¶ 4, 11. Nonetheless, Guzman's description may not have provided a great many details, however, it was accurate and corroborated. *See Benjamin v. City of Miami*, 14-22800-CIV, 2015 WL 1043671, at *3 (S.D. Fla. Mar. 10, 2015) (finding probable cause to arrest and detain plaintiff, considering the totality of the circumstances, i.e., that plaintiff was found near the crime and matched a general description of the assailant, although identification turned out to be mistaken).

Moreover, here, Plaintiff not only matched the general description, but was positively identified by Officer Guzman approximately 40 minutes after observing him driving the black Jeep Compass 20 miles beyond the speed limit. SMF at ¶¶ 28, 29. In *Fowler*, the court found that probable cause existed to arrest plaintiff based on the positive identification from two eye

9

witnesses, who were both police officers, approximately 48 hours after interaction with plaintiff. *Napier v. Fowler*, 09-60684-CIV, 2009 WL 10699620, at *13 (S.D. Fla. Dec. 1, 2009). In *Swanson*, the court found the identification reliable for the purpose of probable cause where the detective had the opportunity to view suspect in close proximity in daylight for approximately three minutes, there was a short time between the first undercover drug buy and the officers' confirmation of defendant's identity the next day, and the detective never expressed doubt as to his identification. *Swanson v. Scott*, 334 F. Supp. 3d 1203, 1217 (M.D. Fla. 2018). Accordingly, *less than one hour* from crime to identification is undoubtedly not the passage of a substantial amount of time which could affect the reliability of the identification. *See also Perez v. State*, 648 So.2d 719 (Fla. 1995) (out-of-court and in-court identifications were reliable and admissible, because identification was made one or two hours after assault, assault occurred in broad daylight, victim was within eight to ten feet of assailant, and victim had clear view of assailant for approximately one minute).

Viewed in the light most favorable to Plaintiff, Guzman's positive identification was reliable for the purposes of establishing actual probable cause for Plaintiff's detention and arrest because it is not in dispute that: (1) Guzman observed a black Jeep Compass traveling 50 miles per hour in a 30 miles per hour zone (SMF at ¶3); (2) Guzman, a trained police officer, had the opportunity to view the driver through the Jeep's windshield in close proximity in daylight with nothing obstructing his view while conducting the radar detail (SMF at ¶¶3,4); (3) the black Jeep Compass collided with another vehicle, and the driver of the black Jeep Compass fled the scene of the collision, obstructing, hindering and/or interfering with the discharge of Guzman's official duties to investigate the incident (SMF at ¶¶ 10, 11); (4) Guzman was able to provide a description of the driver based on his initial observance when conducting radar detail, and adding height and clothing, as the driver fled the scene (SMF at ¶¶ 4, 11); (5) Guzman found a MasTec identification card in the vehicle depicting the Plaintiff, and informed Sgt. Sampson the individual he observed driving the Jeep who fled the scene of the crash matched the description of Plaintiff (SMF at ¶14); (6) upon hearing the BOLO for the vehicle involved in the crash, Officer Guzman arrived at the dispatch location for the alleged stolen vehicle (SMF at ¶¶ 16, 17, 28); (7) reasonable suspicion authorized Guzman to investigate whether the individual reporting the stolen vehicle was in fact the fleeing suspect from the crash scene; (8) the crash scene and the arrest scene are only 2 miles apart (SMF at ¶28); and (9) Guzman positively identified the individual at the arrest scene as the

individual from the crash scene within approximately 45 minutes of the event itself (SMF at ¶29). Guzman's positive identification was further supported by the fact that Plaintiff was profusely sweating, was not at the location of the alleged stolen vehicle upon Bloom's arrival, and provided various accounts of his whereabouts prior to arriving at the arrest scene. SMF at ¶¶ 21, 22, 55-56, 62-64. Guzman's supervisor, Sgt. Sampson also testified he recalled Guzman advising him that the person who fled from the scene matched the individual in the Mas Tech ID card—Plaintiff. SMF at ¶ 14.  While the law requires only that Guzman ascertain "a probability or substantial chance" that Plaintiff had violated the law, actual probable cause existed to support Plaintiff's detention and subsequent arrest because reasonable suspicion existed to investigate a potential crime and Plaintiff obstructed, hindered and/or interfered with the discharge of Guzman's official duties to investigate the incident.

Probable cause existed to arrest Plaintiff for violations of Florida statutes prohibiting leaving a scene of a crash involving damage to vehicle or property, falsely reporting commission of a crime, reckless driving, and for failure to stop at steady red signal. *See* Fla. Stat. §§ 316.061(1); 817.49; 316.192(3); 316.1935, and 316.075(1)(C). Officer Guzman observed a black Jeep Compass speeding 20 miles over the speed limit, failing to stop at steady red signals, and colliding with another vehicle. SMF at ¶¶ 3, 7-10. He then observed the driver of the black Jeep Compass fleeing the Crash Scene. SMF at ¶ 11. Upon arrival at the scene where plaintiff reported the vehicle as stolen and signing a stolen vehicle affidavit, Guzman positively identified Plaintiff as the fleeing suspect. SMF at ¶¶ 24, 29. Moreover, a firearm, which Plaintiff admitted to ownership of and lack of license to carry, and baggies of marijuana were found in the black Jeep Compass, thereby establishing probable cause, or at the very least arguable probable cause, for possession of 20 grams or less of cannabis and violation of license to carry concealed weapon under Fla. Stat. §§ 893.13(6)(B) and 790.06. SMF at ¶¶ 13-14.

Guzman's own undisputed observations led to his positive identification providing him with actual probable cause to believe Plaintiff committed the offenses. The positive identification occurred prior to any action alleged to be a constitutional violation in the Complaint. In accordance with *Vickers* and the fellow officers rule, Officers Carriel, Bloom, and Hernandez, are entitled to rely on Officer Guzman's positive identification of Plaintiff as the fleeing suspect and each of their actions were reasonable/constitutional. The facts and collective knowledge of information available to the Officers support a finding that a reasonable person would believe a criminal

11

offense had been committed.  Thus, Defendants actions, e.g., Hernandez attempting to effectuate an arrest without completion, Officer Carriel displaying his Taser, Hernandez reviewing Plaintiff's wallet contents, Bloom and Hernandez's limited pat-down of Plaintiff's person, and Guzman's arrest of Plaintiff, are all supported by probable cause.

Based on this record, Officer Guzman's identification stands as trustworthy and would cause a prudent person to believe that Plaintiff committed the offenses alleged. *See Swanson v. Scott*, 334 F. Supp. 3d at 1220 (granting defendant's motion for summary judgment based on the existence of probable cause for plaintiff's arrest). Notably, federal law requires only that Officers have arguable, not actual, probable cause to be afforded qualified immunity. *See infra*. By establishing probable cause, each of Plaintiff's claims, both under the Fourth Amendment and state law, against Defendants fail as a matter of law.

Given the indisputable existence of probable cause, the Defendants are entitled to summary judgment from all of Plaintiff's claims, under both § 1983 and state law. *See O'Donnell v. Derrig*, 346 Fed. Appx. 385, 388 (11th Cir. 2009) (affirming summary judgment in favor of defendant on 1983 unlawful seizure claim where the arrest was supported by probable cause). Summary judgment must therefore be entered as a matter of law. Under the totality of the circumstances, Officer Guzman's identification stands as trustworthy and would cause a prudent person to believe that Plaintiff committed the offenses alleged. *See Swanson v. Scott*, 334 F. Supp. 3d at 1220 (granting defendant's motion for summary judgment based on the existence of probable cause for plaintiff's arrest).

**B. DESPITE EXISTENCE OF PROBABLE CAUSE, ONLY REASONABLE ARTICULABLE SUSPICION WAS NECESSARY TO CONDUCT INVESTIGATION PRIOR TO HANDCUFFING PLAINTIFF.**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure under the Fourth Amendment occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003). When a reasonable person would not feel free to terminate the encounter, he has been "seized," and the Fourth Amendment is implicated. *Franklin*, 323 F.3d at 1301. Under *Terry*, however, law enforcement officers may, consistent with the Fourth Amendment, "stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity." *United States v. Williams*, 876 F.2d 1521, 1523 (11th Cir. 1989).

To constitute a valid *Terry* stop, the officers conducting the stop must "have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000). Although reasonable suspicion "requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123(2000). Even if the Defendants did not observe any illegal activity, "[a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *Id.* (citing *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000)). When conduct is susceptible to both an innocent and a suspicious explanation, an "officer[ ][can] detain the individual[ ] to resolve the ambiguity." *Id.*

To determine whether reasonable suspicion exists, the Court "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Matchett*, 802 F.3d 1185, 1192 (11th Cir. 2015). "[T]he police may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *U.S. v. Lindsey*, 482 F.3d 1285, 1290–91 (11th Cir. 2007) (quotation marks omitted). As such, "[r]easonable suspicion is determined from the totality of circumstances and collective knowledge of the officers." *United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006).

In general, unless there is consent, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). But under *Terry*, an officer may frisk or pat-down an individual in order to conduct a limited search for weapons where the officer has reason to believe that the individual is armed and dangerous. *Terry*, 392 U.S. at 27. "Once an officer has legitimately stopped an individual, the officer can frisk the individual so long as 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *United States v. Hunter*, 291 F.3d 1302, 1307 (11th Cir. 2002) (quoting Terry, 392 U.S. at 27).

As discussed in detail *supra* I, before Officers Guzman, Carriel, and Hernandez arrived at the dispatch location, Guzman had observed an individual in a Jeep Compass speeding, pursued that individual, and observed the suspect flee from a collision. SMF at ¶¶ 3, 6-11. Upon arrival to

the dispatch location of the stolen vehicle, Guzman positively identified the individual sitting on the curb as the fleeing suspect. SMF at. ¶¶28-30.

In the instant matter, at what point the "seizure" occurred is moot because there was, at a minimum, objectionably reasonable suspicion that criminal activity was afoot from the moment Officer Guzman positively identified the individual at the dispatch location as the fleeing suspect, thereby justifying a brief investigatory detention pursuant to *Terry*.

In addition, given that during the brief detention to investigate Guzman's belief, Plaintiff was unable to provide an exact address of his previous location or any phone number for whom to call to justify any one of his alibis and was profusely sweating, a reasonably prudent man in the circumstances would be warranted in the belief that there was, at a minimum, reasonable suspension to detain and pat-down suspect.

## II.     QUALIFIED IMMUNITY SHIELDS THE OFFICERS FROM 1983 CLAIMS FOR UNLAWFUL SEIZURE AND UNLAWFUL ARREST.

Because the doctrine of qualified immunity protects government officials from suit, rather than just from liability, "[t]he erroneous denial of qualified immunity on summary judgment significantly undercuts the purposes behind qualified immunity and is harmful even if the defendants, in their individual capacities, ultimately prevail at trial." *Post*, 7 F.3d at 1556-57 (11th Cir. 1993) *modified,* 14 F.3d 583 (11th Cir. 1994). In the context of qualified immunity analysis, the issue is not whether actual probable cause existed but instead whether there was "arguable probable cause" for the plaintiff's arrest. *Whittington*, 490 F. Supp. 2d at 1250 (quoting *Davis v. Williams,* 451 F.3d 759, 762–63 (11th Cir. 2006)). To be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause, but only "arguable probable cause" to make an arrest. *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003); *Knight v. Jacobson*, 300 F.3d 1272, 1274 (11th Cir. 2002). Even if actual probable cause did not exist, arguable probable cause certainly existed assuming these officers would have been reasonably mistaken to think that they had a lawful duty to seize Plaintiff after he interfered with a police investigation.

Under the Fourth Amendment, constitutional claims are governed by a standard of objective reasonableness. *Lee*, 284 F.3d at 1195 (for probable cause to exist, arrest must be objectively reasonable under a totality of the circumstances); *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (courts must ask whether an officer's conduct was objectively reasonable when evaluating an excessive force claim). When an officer asserts the defense of qualified

immunity in response to a false arrest claim, the question is not whether probable cause did, in fact, exist for the arrest but rather, whether there was arguable probable cause to arrest. *Post*, 7 F.3d at 1558. "The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *See Lee*, 284 F.3d at 1196. "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest Plaintiff.'" *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)). "'Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable.'" *Id.* at 734-75 (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)).

The Plaintiff bears the burden of proving that, when the officers acted, the law established the contours of the right so clearly that a reasonable official would have understood his acts were unlawful. *Post*, 7 F.3d at 1557 (citing *Anderson*, 483 U.S. at 640); *see also Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). Meeting this burden requires reliance on more than "general, conclusory allegations or broad legal truisms" because "the line between lawful and unlawful conduct is often vague" and the clearly established standard "demands that a bright line be crossed." *Post*, 7 F.3d at 1557 (citing *Harlow*, 457 U.S. 800; *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989)) (internal quotations omitted); *see also Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post*, 7 F.3d at 1557 (citing *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1323 (11th Cir. 1989)).

### A.   OFFICERS[4] ENTITLED TO QUALIFIED IMMUNITY FOR 1983 UNLAWFUL SEARCH AS NO VIOLATION OF CLEARLY ESTABLISHED LAW OCCURRED

In *Jones*, the Eleventh Circuit determined that for the purposes of satisfying the fact-intensive inquiry that the qualified immunity standard demands, the district court erred in basing its analysis on the general proposition that a pat-down to discover weapons must be based on reasonable suspicion that suspect is armed and dangerous. *Jones v. City of Dothan, Ala.*, 121 F.3d

---

[4] Plaintiff brings a 1983 unlawful search claim against Officers Williams and Hernandez. ECF No. 1 at p. 5. It is important to note that although **no** search claim was pled against Bloom, his actions while Plaintiff was detained were reasonable. SMF at ¶¶50-52.

1456, 1460 (11th Cir. 1997). Rather, the district court should have applied the facts of the case and asked whether, as of the date of the incident, it was clearly established that it was unconstitutional for officers to pat down a man suspected of repeatedly harassing a woman and chasing her from her place of employment where the officers neither handcuffed nor placed the man in a patrol car, and where the officers expected to remain in the man's presence pending identification by the victim. *Id.* The Court found that the officers were entitled to qualified immunity on plaintiff's unreasonable putdown claim based on lack law making it readily apparent to reasonable officers in defendants' position that their conduct was unconstitutional. *Id.*

Similarly, here, the Court's inquiry should be whether, as of June 1, 2018, it was clearly established that it was unconstitutional for Officers to pat down a man positively identified as the fleeing suspect from the scene of a collision. Officers are entitled to qualified immunity on unlawful search claims where a plaintiff has not directed nor is there any law that would have made it readily apparent to reasonable officers in Defendants' position that their conduct was violative of the law. It is well established that '[p]ublic officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases. *Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1460 (11th Cir. 1997). Accordingly, Officers are entitled to qualified immunity and Defendants' motion for summary judgment should be granted as to Plaintiff's claim for an unlawful search.

As additional support, in *Smith v. Confreda*, the defendant briefly frisked plaintiff for weapons for safety purposes per his standard procedure. 614CV1704ORL37TBS, 2016 WL 3344481, at *8 (M.D. Fla. June 15, 2016), aff'd, 713 Fed. Appx. 985 (11th Cir. 2018). "While the minimally intrusive handcuffing and frisk may have been unreasonable under the Fourth Amendment, it did not fall outside the 'hazy border' separating lawful and unlawful conduct." *Id.* (citing *Fertil v. Guzman*, 2014 WL 5522889 at *7–8 (S.D. Fla. Oct. 31, 2014) (finding handcuffing to be unreasonable but "not so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent."). Interestingly, the court in *Smith* found that defendant enjoyed qualified immunity from plaintiff's 1983 claims based on his temporary detention, handcuffing, and frisk, despite defendant's lack of belief that plaintiff was a safety concern or a flight risk. *Id.* Here, Officers had reason to believe that Plaintiff was a flight risk based on the fact he was positively identified as the fleeing suspect from the crash scene.

16

Moreover, at the time of the limited pat-down, the Officers reasonably believed that the Plaintiff attempted to flee the scene of the initial stop and arrest, engaged in a chase ending in a crash, and fled the crash scene. SMF at ¶¶ 8-11. Therefore, it is clear that a reasonable officer, under the circumstances, would believe that the suspect was dangerous, and posed a risk of harm to officers who were present, and to the public if he were again to flee from his place of hiding, justifying a limited pat-down. *See e.g., Baker v. Cohen*, 09-60103-CIV, 2010 WL 3385266, at *12 (S.D. Fla. Aug. 5, 2010), report and recommendation adopted in part, 09-60103-CIV, 2010 WL 3385264 (S.D. Fla. Aug. 26, 2010) (finding use of K-9 was not a violation of plaintiff's constitutional rights under the 4th amendment, entitling officer to qualified immunity). Accordingly, Officers are entitled to qualified immunity and Defendants' motion for summary judgment should be granted as to Plaintiff's §1983 claim for unlawful search.

## B. OFFICERS ENTITLED TO QUALIFIED IMMUNITY FOR 1983 UNLAWFUL SEIZURE

In Florida, the fellow officer rule allows an arresting officer "who was absent for a significant portion of events giving rise to probable cause…[to] rely upon his fellow officer's judgment about probable cause." *Williams v. Miami-Dade Police Dept.*, 297 Fed. Appx. 941, 946 (11th Cir. 2008) (citing Fla. Stat. Ann. § 901.18); *see also, e.g., Voorhees v. State*, 699 So.2d 602, 609 (Fla. 1997). "The collective knowledge of police investigating a crime is imputed to each member under a rule of law called the 'fellow officer rule' or 'collective knowledge rule.'" *Johnson v. State*, 660 So.2d 648, 657 (Fla. 1995). "[A] non-arresting officer does not have a duty to investigate the basis of another officer's arrest." *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013).

Officer Guzman, at a minimum, based on the information provided *supra* I.A., had arguable probable cause to arrest Plaintiff. Under Florida's "fellow officer rule," Officers Carriel, Bloom, and Hernandez were justified in relying on the information provided by Guzman. Given the indisputable existence of arguable probable cause, the Defendants are entitled to qualified immunity from Plaintiff's false arrest claims under § 1983.

## III. UNLAWFUL SEARCH CLAIM FAILS BECAUSE PLAINTIFF CONSENTED TO SEARCH

"It is 'well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.'" *Webb v.*

*English*, 3:19-CV-975-MMH-JBT, 2021 WL 4340426, at \*12 (M.D. Fla. Sept. 23, 2021) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given .... Voluntariness is a question of fact to be determined from all the circumstances." *United States v. Yeary*, 740 F.3d 569, 581 (11th Cir. 2014). "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." *United States v. Peguero*, 518 Fed. Appx. 792, 795 (11th Cir. 2013) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, (1973)).

In *Busby*, the court found that plaintiff's Section 1983 claim for unreasonable search and seizure failed because video footage from sergeant's body camera confirmed that plaintiff consented to search of her person. *Harris v. Busby*, 7:16-CV-135 (WLS), 2020 WL 9763091, at \*3 (M.D. Ga. Oct. 16, 2020) (granting motion for directed verdict in favor of defendants). Like the *Busby* case, here, the body worn camera footage shows Officer Bloom asking, in a nonthreatening voice, if it was okay that he pat Plaintiff down to which Plaintiff replied it was "okay". SMF at ¶ 50. After Plaintiff consented to the pat-down search, Officer Hernandez checked his back right pocket and held up Plaintiff's black shirt as Officer Bloom conducted the limited pat-down search for weapons for officer safety purposes. SMF at ¶¶ 51-53.

Careful review of the body worn camera footage also confirms that at no time prior to the limited pat-down search for weapons did the officers ever have guns drawn, address Plaintiff in a threatening manner, or otherwise coerce him into acquiescence and that nothing about Plaintiff's words or demeanor before or during the search was in any way incompatible with the existence of voluntary consent. Plaintiff was cooperative throughout the entire encounter. Although the Officers did not expressly tell Plaintiff he could refuse, the Defendants are not required to show that the suspect was aware of his right to refuse consent, nor did they tell Plaintiff he was obligated to comply. Accordingly, as Plaintiff's consent to search his person was freely and voluntarily given, Officers have not violated a constitutional right and summary judgment should be granted as to Plaintiff's 1983 unlawful search claim. *Webb v. English*, 3:19-CV-975-MMH-JBT, 2021 WL 4340426, at \*12 (M.D. Fla. Sept. 23, 2021) ("A police officer who searches a person who has consented to that search does not violate a constitutional right"; citing *Fair v. Mills*, 230 F. Supp. 3d 1305, 1310-11 (M.D. Fla. 2017)).

## IV.  STATE LAW FALSE ARREST AND MALICIOUS PROSECUTION CLAIMS ARE BARRED BY FLA. STAT. § 768.28

Florida Statute § 768.28(9)(a) provides an immunity from suit for officers and the presumption of good faith attaches to an officer's actions, unless it is **shown** that the officer "acted in bad faith or with malicious purpose or with wanton or willful disregard of human rights." Under § 768.28, Florida Statutes:

No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort … for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). Absent from the record is any evidence articulating or even suggesting any of the Officers' actions were done with malice or bad faith in light of probable cause existing for the arrest. *See Bloom v. Alvereze*, 498 F. Appx 867, 881 (11th Cir. 2012) (affirming dismissal under Fla. Stat. § 768.28(9)(a), sovereign immunity, finding that the alleged misconduct of the defendant failed to establish bad faith in light of the conclusory allegations). In fact, the allegations in the Complaint establish they were acting within the scope of their duties as a duly appointed law enforcement officers for the City of Miami. Plaintiff's state tort claim against the Officers therefore fails for failure to state a cause of action.

## V.  PLAINTIFF FAILS TO STATE CAUSE OF ACTION FOR MALICIOUS PROSECUTION

To establish a claim for malicious prosecution, Plaintiff must show: "(1) The commencement or continuance of an original civil or criminal judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff." *Duval Jewelry Co. v. Smith*, 136 So. 878, 880 (Fla. 1931); *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). The burden of proving each of the elements by a preponderance of the evidence rests with the plaintiff and "[i]f any one of these elements is lacking,

the result is fatal to the action." *Id.* "Making statements to a detective in the context of a larger criminal investigation does not mean that individual initiated a criminal prosecution." *Jones v. Butt*, 643 Fed. Appx. 926, 930 (11th Cir. 2016) (citing *Eubanks v. Gerwen*, 40 F.3d 1157, 1160–61 (11th Cir. 1994)).

Plaintiff contends that Officers Guzman and Bloom are responsible for the initiation of the criminal proceeding commenced against him. ECF No. 1 at ¶ 50. Plaintiff also claims that Defendants lacked probable cause "to arrest or prosecute Scott for any of the charges." ECF No. 1 at ¶ 52. However, Defendants merely performed their duties as police officers in conducting an investigation into the fleeing suspect, which led them to the dispatch location, where Plaintiff was unable to dispel their beliefs, arrest Plaintiff, and turned over all relevant information to the State Attorney. SMF at ¶¶ 77, 79-80; *see generally* SMF.. Defendants also provided statements in relation to their investigation and actions on June 1, 2018. SMF at ¶¶79-80. Plaintiff's bond was fixed at $5,000 by a Judge (SMF at ¶78), and Defendants did not make the decision as to whether or not to prosecute Plaintiff (SMF at ¶78), nor is there any evidence that they acted with malice or improperly withheld information or influenced the decision to prosecute (Judge (SMF at ¶¶79-80). *Williams,* 297 F. App'x at 947 ("The intervening acts of the prosecutor, grand jury, judge and jury … each break the chain of causation unless plaintiff can show that these intervening acts were the result of deception or undue pressure by defendant policemen."). Therefore, Defendants Guzman and Bloom cannot be said to be the "legal cause of the original proceeding" as required under Florida's malicious prosecution claim. See *Jones*, 643 Fed. Appx. at 930. Furthermore, as discussed *supra* I, there was probable cause to arrest Plaintiff. Accordingly, Plaintiff fails to state a cause of action for malicious prosecution and summary judgment should be granted in Defendants' favor.

WHEREFORE, the Defendants, CITY OF MIAMI, JONATHON GUZMAN, MICHAEL BLOOM, BRANDON WILLIAMS, MIGUEL HERNANDEZ, and RANDY CARRIEL, respectfully request this Court grant this Joint Motion for Summary Judgment, and any other relief deemed appropriate.

I HEREBY CERTIFY that on this 24th day of January, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

MARRERO & WYDLER
*Counsel for Defendant Hernandez*
2600 Douglas Road, PH-4
Coral Gables, FL 33134
(305) 446-5528
(305) 446-0995 (fax)

By: __/s/ Lourdes E. Wydler_____
    OSCAR E. MARRERO
    Florida Bar Number: 372714
    oem@marrerolegal.com
    LOURDES ESPINO WYDLER
    Florida Bar Number:  719811
    lew@marrerolegal.com
    LAUREN D. MARTIN
    Florida Bar Number:  1034166
    ldm@marrerolegal.com

VICTORIA MÉNDEZ, City Attorney
BRANDON L. FERNANDEZ,
Assistant City Attorney
Attorneys for **City of Miami, Officers Guzman, Bloom, Carriel, and Williams**
444 S.W. 2nd Avenue, Suite 945
Miami, FL  33130-1910
Tel.: (305) 416-1800
Fax: (305) 400-5071
Email:  BFernandez@miamigov.com
Secondary Email:  dbailey@miamigov.com

By: */s/ Brandon L. Fernandez*
    Brandon L. Fernandez
    Assistant City Attorney
    Florida Bar No. 1002969

**<u>SERVICE LIST</u>**

<u>Counsel for Plaintiff</u>:
Faudlin Pierre, Esq.
FBN: 56770
Fplaw08@yahoo.com
PIERRE SIMON
60 S.W. 4th Avenue
Ft. Lauderdale, FL 33315
(305) 336-9193
<u>Secondary E-mails:</u>
jennito.simon@gmail.com
fparalegal@gmail.com

<u>Counsel for Co-Defendants, City of Miami, Guzman, Bloom, Williams, and Carriel:</u>
 Brandon Fernandez, Esquire
FBN: 1002969
BFernandez@miamigov.com
Bryan Capdevila, Esquire
FBN: 119286
Office of the City Attorney
City of Miami
444 S.W. 2nd Avenue, 9th Floor
Miami, FL 33130-1910
BCapdevila@miamigov.com
(305) 416-1800
(305) 400-5071 (fax)
<u>Secondary E-mails:</u>
dbailey@miamigov.com
rgillespie@miamigov.com