UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 2021-CV-23995-PCH/JB

**SAMUEL SCOTT JR**,

    Plaintiff,

v.

**CITY OF MIAMI, et al,**

    Defendants.

## STATEMENT OF MATERIAL FACTS SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, **Samuel Scott Jr.**, submits his Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment, and states:

### Undisputed Facts

1. Undisputed.

2. Undisputed.

3. Disputed. On June 1, 2018, Scott's vehicle had tints on all of the windows. Scott Aff. ¶¶ 4, 8. On June 1, 2018, the windshield had tints surrounding the edges. Ex. 1, Scott Aff. ¶¶ 4, 8. On June 1, 2018, Scott's work ID was hanging from a lanyard on the rearview mirror where Scott left it and Guzman found it. Ex. 1, Scott Aff. ¶¶ 3, 7, Ex. 2, Arrest Aff. 2, Ex. 3, Guzman Depo. 173:21-174:4. The vehicle passed Guzman at an angle travelling at 50 miles per hour. Ex. 3, Guzman Depo. 211:17-19, 21. According to Guzman's arrest affidavit, Guzman did not observe anyone in the vehicle. Ex. 2, Arrest Aff. 1-2, Ex. 3, Guzman Depo. 244:10-12, 14, 17-19, 22.

4. Disputed. On June 1, 2018, Scott's vehicle had tints on all of the windows. Scott Aff. ¶¶ 4, 8. On June 1, 2018, the windshield had tints surrounding the edges. Ex. 1, Scott Aff. ¶¶ 4, 8. On June 1, 2018, Scott's work ID was hanging from a lanyard on the rearview mirror where Scott left it and Guzman found it. Ex. 1, Scott Aff. ¶¶ 3, 7, Ex. 2, Arrest Aff. 2, Ex. 3, Guzman Depo. 173:21-174:4. The vehicle passed Guzman at an angle travelling at 50 miles per hour. Ex.



600 Southwest 4th Avenue, Fort Lauderdale, Florida 33315

3, Guzman Depo. 211:17-19, 21. According to Guzman's arrest affidavit, Guzman did not observe anyone in the vehicle. Ex. 2, Arrest Aff. 1-2, Ex. 3, Guzman Depo. 244:10-12, 14, 17-19, 22. Guzman's arrest affidavit states: "As he fled I observed a black male, bold [sic], about 62, heavy set, with a white tank top running away from the scene." Guzman testified that the first time Guzman physically observed Scott is when he retrieved Scott's work ID attached to his lanyard which hung on the rearview mirror. Ex. 3, Guzman Depo., 91:11-13, 16.

     5.     Disputed. Based on the arrest form, Guzman arrested Scott at 6:05 PM. Ex. 3, Arrest Aff. 1.

     6.     Undisputed.

     7.     Undisputed.

     8.     Undisputed.

     9.     Undisputed.

     10.     Disputed. There is no such intersection of 54th and 72nd Street in Miami, Florida. The crash occurred at 515 Northwest 72nd Avenue. Ex. 3, Guzman Depo. 125:24-25.

     11.     Disputed. The crash occurred at 6:22 PM on June 1, 2018. Ex. 4, Crash Report 1, Ex. 5, Williams Depo. 109:19-110:9; Ex. 3, Guzman Depo. 120:7-8, 10. Guzman did not observe the driver's face and saw only the driver's back. Ex. 3, Guzman Depo. 166:1-2, 8-9. When Guzman exited his vehicle at the crash site, the driver was 20 yards ahead of him, running **northbound** under the I-95 tunnel. Ex. 3, Guzman Depo. 36:1-11, 17-22. Guzman's arrest affidavit states that he "observed a black male, bold, about 62, heavy set, with a white tank top running away from the scene". Ex. 2, Arrest Aff. 2. There was no indication of what bottoms the driver was wearing. *Id*. Carriel stated Guzman informed him that the driver was wearing shorts. Ex. 6, Carriel Depo. 127:2-8.

     12.     Disputed. Guzman did not call for a perimeter because there was no perimeter. Sampson stated that nobody was manning the perimeter. Ex. 7, Sampson Depo. 37:22-24. Williams stated he was manning the northeast section based on his own volition. Ex. 5, Williams Depo. 17:12-19. Bloom stated that he heard about a perimeter at roll call. Ex. 8, Bloom Depo. 146:15-24. Roll call happened four hours before the crash occurred. *Id*., Ex. 4, Crash Report 1, Ex. 5, Williams Depo. 109:19-110:9; Ex. 3, Guzman Depo. 120:7-8, 10.

     13.     Disputed. Scott was not in possession of his firearm as his vehicle was two miles away or narcotics. Scott Aff. ¶ 10. To the extent that any inference suggests that Scott did not have



the firearm secured, Scott testified that it was secured so no one could get to it. ECF No. 56-1, 121:17-20.

14. Disputed. Guzman testified that the first time Guzman physically observed Scott is when he retrieved Scott's work ID attached to his lanyard which hung on the rearview mirror. Ex. 3, Guzman Depo., 91:11-13, 16. According to Guzman's arrest affidavit, he did not observe anyone in the vehicle. Ex. 2, Arrest Aff. 1-2, Ex. 3, Guzman Depo. 244:10-12, 14, 17-19, 22. His first observation of the suspect was after the suspect exited the vehicle. *Id*., Guzman Depo. 34:2-5., Ex. 2, Arrest Aff. 1-2, Ex. 3, Guzman Depo. 244:10-12, 14, 17-19, 22. Therefore, Guzman could not have found a MasTec identification card matching the description of the driver nor could he inform Sampson of that fact – or Guzman lied to Sampson. Moreover, Guzman said that he told Sampson that he was headed to the other scene where Bloom was located, and upon his arrival, he informed Sampson that the person reporting the stolen vehicle matched the driver. Ex. 3, Guzman Depo. 44:20-23, 56:12-18.

15. Disputed. Guzman informs Carriel the description of the fleeing suspect was a black male, heavy set, tank top with shorts. Ex. 6, Carriel Depo. 41:18-25, 42:2.

16. Disputed. Undisputed that a dispatch was sent identifying Mr. Scott's vehicle but disputed as to the contents of the dispatch. At 6:22 pm, the dispatch indicated that Mr. Scott reported his vehicle stolen by an unknown offender and the vehicle was last seen on 48th Street and 6th Ave. Ex. 10, CAD Report, Ex. 8, Bloom, 136:14-24.

17. Disputed. Officer Bloom did not speak to Guzman and Carriel prior to them arriving at his scene and did not provide these officers with a description of the Scott. Ex. 8, Bloom Depo. 57:14-61:12.

18. Undisputed.

19. Disputed in part. Williams was told by Guzman to complete the report. Ex. 5, Williams Depo. 28:2-7.

20. Disputed. Guzman learned that the vehicle was stolen at the time of the crash. Guzman was monitoring the main channel (patrol channel). Ex. 3, Guzman Depo. 27:19-24. At the time of the crash, 6:22 PM, dispatch indicated that Scott reported his vehicle stolen by an unknown offender and the vehicle was last seen on 48th Street and 6th Ave. Ex. 10, CAD Report, Ex. 8, Bloom, 136:14-24, Ex. 5, Williams Depo. 109:19-11-:9; Ex. 3 Guzman Depo. 120:7-8, 10, Ex. 4, Crash Report 1.



600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**

21. Disputed in part. Undisputed that Plaintiff was wearing a dark colored shirt with dark colored blue jeans, and red or burgundy shoe. Disputed that Bloom did not observe Scott at the location that was provided by the dispatch. The dispatch provided Scott's aunt's address which is 563 NW 48th Street, and Bloom found Scott in front of his aunt's house. Ex. 10, CAD Report, ECF No. 56-1, 77:17-25.

22. Disputed in part. Undisputed that Bloom questioned Plaintiff about the stolen vehicle. Disputed that Scott advised Bloom that he left the car running at a near-by park with the keys inside, left to visit a relative's house, and returned to the park to find his car missing. Scott Aff. ¶ 9. Undisputed that The Incident Report Search With Incident Details Report (CAD Report) generated on the date of the incident also states that the stolen vehicle was last seen at the approximate location of NW 6th Ave/48 Street. Disputed that the last seen location is a park. The street sign of NW 6th Ave/48 Street is located next to a residence. Carriel BWC T22:45:47Z, ECF No. 154:8-12.

23. Disputed. Scott told the dispatcher someone jumped in his car and drove off. ECF No. 56-1, 25:20-22. Scott reported his vehicle stolen at 6:22 PM on June 1, 2018, the same time the crash occurred. Ex. 10, CAD Report, Ex. 8, Bloom, 136:14-24, Ex. 5, Williams Depo. 109:19-110:9; Ex. 3 Guzman Depo. 120:7-8, 10, Ex. 4, Crash Report 1. The evidence cited to support allegation 23 state that the distance from his cousin's house and aunt's house is five blocks not that he drove five blocks from these locations. ECF No. 56-1, 67:12-17.

24. Disputed in part. Undisputed that Scott filled out and signed a stolen vehicle affidavit. Disputed that Bloom advised him the information submitted in the stolen vehicle affidavit needed to be truthful. ECF No. 56-1, 80:16-18. Bloom gave Scott the stolen affidavit and advised Scott to fill it out and sign it. *Id*.

25. Undisputed.
26. Undisputed.
27. Undisputed.
28. Undisputed.
29. Disputed. The body worn camera does not support that Guzman tells Carriel that's the guy. Guzman BWC 1, T22:45:23Z-T22:46:01Z, Carriel BWC T22:45:11Z-T22:46:01Z. Moreover, evidence shows that Defendants were uncertain as to whether Scott was the guy from previous scene. Guzman repeatedly stated that Plaintiff was being detained (i.e., confirm or dispel



600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**

his suspicion to determine if a crime has been committed). Guzman BWC 1, T22:52:35Z - T22:52:47Z, Ex. 6, Carriel Depo. 80:2-8, Guzman BWC 1, T22:47:24Z -T22:47:33Z. Carriel stated that Guzman was unsure of who actually stole the vehicle. Ex. 6, Carriel Depo. 163:15-18. Carriel is heard saying in Spanish, "If this is the guy you saw, we don't have to wait for anything else." Ex. 6, Carriel Depo. 173:12-174:15, Ex. 9, Hernandez Depo. 111:11-17. Bloom stated that there was no reason to detain Scott and he was not the suspect of criminal activity for simply filing a report. Ex. 8, Bloom Depo. 46:11-47:2, 111:21-112:4.

30. Undisputed.

31. Disputed in part. Disputed that any inference arising "that's him, that's the bailout" meant that Scott was positively identified as the individual who fled the crash scene. Guzman did not see the face of the person who fled the scene but his back. Ex. 3, Guzman Depo. 166:1-2, 8-9. According to Guzman, the first time Guzman physically observed Scott is when he retrieved Scott's work ID attached to his lanyard which hung on the rearview mirror. Ex. 3, Guzman Depo., 91:11-13, 16. Carriel has no personal knowledge of the descriptor of the individual who fled the scene but relied on Guzman's description of heavy set black male wearing a white tank top and shorts. Ex. 6, Carriel Depo. 41:18-25, 42:2. Scott, was a black male wearing a black shirt, and blue jeans. Guzman BWC 1, T22:45:40Z. Defendants knew that Guzman was uncertain about fleeing suspect's identity. Ex. 6, Carriel Depo. 163:15-18, Ex. 9, Hernandez Depo. 111:25-112:2, 9.

32. Disputed. The cited evidence does not support the allegations in paragraph 32. The evidence shows a view of Bloom's patrol vehicle. Carriel BWC at T22:45:58Z. Furthermore, the evidence is a still shot of the Hernandez's SUV with his window up. Carriel BWC at T22:45:39Z. Moreover, Hernandez has no independent recollection of the events on June 1, 2018. Hernandez 51: 6-11: Hernandez states that all his knowledge comes from the video and he has reconstructed his story based on the video. Ex. 9, Hernandez Depo. 133:22-134:9, 138:18-140:8.

33. Undisputed.

34. Disputed. After Guzman speaks with Bloom, he walks over to his car spoke, picks up his cell phone, and states: "Sarge, that's your boy…he signed the affidavit already." Guzman BWC 1, at T22:46:02Z to T22:46:53Z. The video does not indicate that Guzman sought approval from his sergeant.

35. Disputed in part. The evidence shows that Hernandez, Bloom, and Patricia Carriel are speaking to each other and disregard Plaintiff. Carriel BWC T22:46:12Z - T22:46:42Z.



600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**

36. Disputed. There was no previous calls made to the Sergeant after speaking to Bloom. Guzman BWC 1, T22:46:02Z -T22:46:53Z.

37. Disputed. First, Defendants' subjective belief is irrelevant. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *Anderson v. Creighton*, 483 U.S. 635, 641(1987). The overwhelming evidence shows that Defendants did not have probable cause to arrest Scott. Guzman did not observe anyone in the vehicle. Ex. 2, Arrest Aff. 1-2, Ex. 3, Guzman Depo. 244:10-12, 14, 17-19, 22. Guzman's arrest affidavit states:, "As he fled I observed a black male, bold [sic], about 62, heavy set, with a white tank top running away from the scene." Ex. 2, Arrest Aff. 2. According to Guzman, the first time Guzman physically observed Scott is when he retrieved Guzman testified that the first time Guzman physically observed Scott is when he retrieved Scott's work ID attached to his lanyard which hung on the rearview mirror. Ex. 3, Guzman Depo., 91:11-13, 16. Guzman stated that he had probable cause to arrest Scott because he observed a six foot two, black male, heavyset, running northbound. Ex. 3, Guzman Depo. 136:15-20, 23. Carriel stated that Guzman was unsure of who actually stole the vehicle. Ex. 6, Carriel Depo. 163:15-18. Carriel conceded that *if* Guzman saw this guy, there's enough probable cause here to arrest him. Ex. 6, Carriel Depo. 174:6-12. Bloom had no idea the other officers were intending to arrest Scott and his co-defendant did not inform him whether there was probable cause to arrest Scott. Ex. 8, Bloom Depo. 90:13-91:18. Bloom testified that there was no probable cause to arrest Scott for reporting his vehicle stolen. Ex. 8, Bloom Depo. 99:5-100:7. Bloom also testified that there was no probable cause to arrest Scott for simply being a heavy set black male and that description could fit a lot of people in Miami. Ex. 8, Bloom Depo. 119:1-8, 23-24, 120:1-7. Bloom knew the officers were conducting an investigation but there was no indication that Scott would be arrested. *Id*. Bloom stated that the officers stated that it was a ***possibility*** that Scott may have been the person who got out of the perimeter but they were conducting an investigation. Ex. 8, Bloom Depo. 92:15-25, 167:1-13. Bloom was surprised when Scott got arrested. Ex. 8, Bloom Depo. 129:12-25. Hernandez concedes that there was uncertainty that Scott was the one who drove Scott's vehicle. Ex. 9, Hernandez Depo. 111:25-112:2, 9. Hernandez did not know whether Scott was going to be arrested. Ex. 9, Hernandez Depo. 118:12-14, 16. Guzman did not consult with Carriel, Hernandez, or Bloom regarding making the arrest. Ex. 3, Guzman Depo. 65:2-5. Finally, Defendants repeated expression that Scott was being detained signifies the parties did not have probable cause to arrest.

Guzman BWC 1, T22:52:35Z- T22:52:47Z, Ex. 6, Carriel Depo. 80:2-8, Guzman BWC 1, T22:47:24Z -T22:47:33Z.

38. Disputed. Hernandez has no independent recollection of the events on June 1, 2018. Ex. 9, Hernandez Depo. 51: 6-11. Hernandez states that all of his knowledge comes from the video and he has reconstructed his story based on the video. Ex. 9, Hernandez Depo. 133:22-134:9, 138:18-140:8. Further, no one communicated to Fernandez about the bail out so he could not have learned about it. Ex. 8, Bloom Depo. 79:4-6, Ex. 3, Guzman Depo. 126: 9-12, 17. Hernandez says you cannot trust what he says if it's not on the video. Ex. 9, Hernandez Depo. 133:22-134:9.

39. Disputed. Scott was told to remove everything from his pocket. ECF No. 56-1, 89:8-19.

40. Disputed. Plaintiff immediately places his hands on Bloom's patrol car at Hernandez's command. ECF No. 56-1, 86:24-87:9.

41. Disputed in part. Scott disputes the characterization. Scott does not dispute that Hernandez told Scott to put his hands behind his back. However, the undisputed video evidence and corroborating testimony shows that Hernandez was going to arrest Scott. Carriel BWC, Ex. 3, Guzman Depo. 59:8-13, 60:7-9, 12, 61:5-6, 9-12, Carriel BWC T22:47:14Z- T22:47:34Z.

42. Disputed. Thirty seconds before Hernandez reached for his handcuffs, Guzman saw Hernandez attempting to arrest Scott. Guzman BWC 1, T22:47:03Z -T22:47:33Z. Guzman walks over and states "QRX. QRX. QRX. QRX. QRX. QRX. He's being *detained* right now but QRX " as Carriel exclaims "*detain* him, *detain* him." *Id*. QRX means to standby. Ex. 6, Carriel Depo. 80:2-8. As Guzman puts it: "Officer Hernandez was in a rush [to arrest] for whatever reason to put him in handcuffs and into the vehicle, and that's why I told him to stop." Ex. 3, Guzman Depo. 239:7-9, *see also* Ex. 3, Guzman Depo. 206:22-25("Q. Okay. What do you mean by rush the arrest? A. He was trying to get him in custody and handcuffed inside the vehicle, and that's when you heard me tell him to stop and slow down.).

43. Disputed. Guzman walks over and states "QRX. QRX. QRX. QRX. QRX. QRX. He's being *detained* right now but QRX " as Carriel exclaims "*detain* him, *detain* him." Guzman BWC 1, T22:47:24Z -T22:47:33Z.

44. Disputed. Guzman told him to slow down because he was unsure the identity of the suspect who fled the crash scene. Guzman did not observe the driver's face and saw only the driver's back. Ex. 3, Guzman Depo. 166:1-2, 8-9. When Guzman exited his vehicle at the crash



site, the driver was 20 yards ahead of him, running **northbound** under the I-95 tunnel. Ex. 3, Guzman Depo. 36:1-11, 17-22. Guzman's arrest affidavit states: "As he fled I observed a black male, bold [sic], about 62, heavy set, with a white tank top running away from the scene." Guzman testified that the first time Guzman physically observed Scott is when he retrieved Scott's work ID attached to his lanyard which hung on the rearview mirror. Ex. 3, Guzman Depo., 91:11-13, 16. Further, Guzman repeatedly stated that Plaintiff was being detained. Guzman BWC 1, T22:47:24Z -T22:47:33Z. Carriel stated that Guzman was unsure of who actually stole the vehicle. Ex. 6, Carriel Depo. 163:15-18. Carriel is heard saying to Guzman in Spanish , "If this is the guy you saw, we don't have to wait for anything else." Ex. 6, Carriel Depo. 173:12-174:15, Ex. 9, Hernandez 111:11-17. Bloom stated that there was no reason to detain Scott and he was not a suspect of criminal activity for simply filing a report. Ex. 8, Bloom Depo. 46:11-47:2, 111:21-112:4.

45. Disputed in part. Officer Hernandez did not place handcuffs but he did participate in effectuating the arrest. Ex. 9, Hernandez Depo. 84:18-25; *see Jones v. Cannon*, 174 F. 3d 1271, 1283-84 (11th Cir. 1999) ("where an officer was present during an arrest and knew the arresting officer lacked reasonable basis for arguing probable cause, the non-arresting officer could be liable under § 1983 if he was sufficiently involved in the arrest.").

46. Disputed in part. Undisputed that Hernandez searched Scott's wallet and talks about identification among other things. As part of this discussion, Scott states that he can confirm his whereabouts. Carriel BWC, T22:47:57Z - T22:48:00Z.

47. Disputed. Carriel states: "Papi tiene la camiseta blanca debajo. Tiene la camiseta blanca debajo. Con es no mas. Eso no mas."[1] Carriel they had probable cause to arrest Scott because he had the white shirt underneath and they didn't need anything more. Ex. 6, Carriel Depo. 170:1-13.

48. Disputed in part. Undisputed that the evidence supports the statements of: "Check with the guy… at the body shop if he has cameras outside" and "but the dealership did not have

---

[1] Google translates to "Daddy, he has the white shirt underneath. He has the white shirt underneath. With is no more. That no more."
https://www.google.com/search?q=google+translate&oq=google&aqs=chrome.3.0i131i355i433i512j46i131i199i433i465i512j0i131i433i512l3j0i512l2j69i61.6974j0j4&sourceid=chrome&ie=UTF-8



600 Southwest 4th Avenue, Fort Lauderdale, Florida 33315

any". However, the evidence does not support an inference that the *body shop* did not have any cameras because the *dealership* didn't have any.

49. Disputed. Mischaracterizes the evidence. Scott testified: "I was asked if there's anything that would stick me -- stick them in any pocket.· I told them, no. And they proceeded to search to make sure there was nothing else in my pockets." ECF No. 56-1, 89:15-19.

50. Disputed in part. Undisputed that Bloom states that "I just want to pat you down okay" and Scott responds "okay." However, the evidence does not support an inference that his "okay" was consensual. The undisputed video evidence shows that prior to this exchange, Scott had already been searched by Hernandez, Hernandez instructed him to place his hands on Bloom's patrol car, and that Scott maintained his hands on the patrol car at the time of his exchange with Bloom. Carriel BWC, T22:47:13Z - 22:50:07Z.

51. Disputed. Hernandez searches Scott's back pocket nearly two and half minutes before Scott says "okay" to Bloom. Carriel BWC, T22:47:13Z - 22:50:07Z. It was not for safety reasons when the initial search revealed no threats. *Id*.

52. Disputed. There were no instructions giving to Bloom or Hernandez to search Scott. Carriel BWC, T22:47:13Z - 22:50:07Z. The undisputed video evidence shows that Guzman was away when the search began. Carriel BWC, T22:47:13Z - 22:50:07Z, Guzman BWC, T22:47:13Z - 22:50:07Z. Bloom stated he didn't perceive Scott as dangerous. Ex. 8, Bloom Depo. 81:6-10. An officer's belief of safety must be reasonable. *Arizona v. Johnson*, 555 U.S. 323, 332, 129 S. Ct. 781, 787, 172 L. Ed. 2d 694 (2009) (Holding that this belief must be based on a reasonable suspicion that the individual is armed and dangerous.). There was no need to search Scott three times when the initial search did not reveal any weapons. Additionally, the undisputed video evidence shows that Scott did not pose a danger to anyone. Carriel BWC, T22:47:13Z - 22:50:07Z, Guzman BWC, T22:47:13Z - 22:50:07Z.

53. Undisputed. The search revealed his white undershirt beneath his black shirt.

54. Disputed. On multiple occasions, Scott was informed he was being detained. Guzman BWC 1, T22:52:35Z- T22:52:47Z, Ex. 6, Carriel Depo. 80:2-8, Guzman BWC 1, T22:47:24Z -T22:47:33Z.

55. Disputed. Bloom testified: "Physically, I mean, he's a big guy. Had a little sweat coming off his forehead, but that's pretty much it." Ex. 8, Bloom Depo, 32:17-20.



56.     Disputed in part. Undisputed that Carriel asked Scott why he was sweating a lot to which Plaintiff advised he is on testosterone. However, Carriel's subjective belief on whether Scott ran from the crash scene is irrelevant for qualified immunity and Fourth Amendment purposes. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *Anderson v. Creighton*, 483 U.S. 635, 641(1987). Accordingly, this is not a material fact which is considered on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, no reasonable inference can be made that Scott was sweating resulting from a two mile run from the crash scene. The evidence shows that this was a hot summer day. Ex. 8, Bloom Depo. 42:8-25. Bloom stated that Scott did not look like he came back from a run – especially in jeans – when he met Scott on the sidewalk. Ex. 8, Bloom Depo. 41:18-42:5, 254:8-17. Carriel's belief is unreasonable given that the crash occurred at the same time Scott reported his vehicle stolen from 563 NW 48th Street and the driver was seen running northbound and Scott was located two miles south of the crash. Ex. 10, CAD Report, Ex. 8, Bloom, 136:14-24, Ex. 5, Williams Depo. 109:19-11-:9; Ex. 3 Guzman Depo. 120:7-8, 10, Ex. 4, Crash Report 1, Ex. 3, Guzman Depo. 136:15-20, 23.

57.     Disputed. Carriel stated: "Papi pero si tu lo puedes ver y es el, no hay que esperar a nada."[2] Carriel testified that his statement to Guzman translated in English is: "If this is the guy you saw, we don't have to wait for anything else." Ex. 6, Carriel Depo. 173:13-14. Hernandez stated that Carriel's statement translated to English is: "If you saw him, and you identified him, what are you waiting for?" Ex. 9, Hernandez Depo. 110:11-17. Carriel conceded that the inference from his statement is that if Guzman saw this guy, there's enough probable cause here to arrest him" Ex. 6, Carriel Depo. 174:6-12.

58.     Disputed. The full quote is: "Yeah that's him. Sarge, he's sweating. He has a black shirt on top of the tank top shirt that he had when he was driving. QRU all the way. No, no he wasn't. Eh, no no. They didn't tell me they saw the guy. The guy was on the phone. The short guy was on the phone when I got there. ***I don't know if he saw the guy or not. That's when I came back. There was nobody outside when he crashed***." Guzman BWC 1, T22:51:25Z - T22:52:08Z. The full quote suggests that the identity of the individual was in question. Furthermore, any

---

[2] Google Translation from Spanish to English is "Daddy, but if you can see him and it's him, we don't have to wait for anything."
https://translate.google.com/?sl=auto&tl=en&text=Papi%20pero%20si%20tu%20lo%20puedes%20ver%20y%20es%20el%2C%20no%20hay%20que%20esperar%20a%20nada&op=translate&hl=en



suggestion that Guzman saw Scott driving his vehicle is controverted by Guzman's testimony and his arrest affidavit. Guzman saw the individual's back not his face. Ex. 3, Guzman Depo. 166:1-2, 8-9. Guzman did not observe anyone in the vehicle. Ex. 2, Arrest Aff. 1-2, Ex. 3, Guzman Depo. 244:10-12, 14, 17-19, 22. Guzman's arrest affidavit states: "As he fled I observed a black male, bold [sic], about 62, heavy set, with a white tank top running away from the scene." *Id*. Guzman testified that the first time Guzman physically observed Scott is when he retrieved Scott's work ID attached to his lanyard which hung on the rearview mirror. Ex. 3, Guzman Depo., 91:11-13, 16.

      59.     Disputed in part. The evidence cited does not support "after confirming his observations with Sgt Sampson". Guzman BWC 1, at T22:52:36Z; Carriel BWC at T22:52:41Z; ECF no. 56-1, 96:2-25. Undisputed that Guzman instructs Scott to put his hands behind his back and proceeds to handcuff Scott.

      60.     Undisputed.

      61.     Undisputed.

      62.     Undisputed.

      63.     Undisputed.

      64.     Disputed. Scott did not tell Carriel "that his car was stolen in Miami Gardens, but he got nervous, and got on a bust, and called 911 from Model City." Carriel stated that this explanation was on his body worn camera, but a review of his body worn camera reveals that was untrue. Carriel BWC generally, Ex. 6, Carriel Depo. 56:9-18. Scott did not tell Bloom that he called 911 to report his stolen vehicle from a nearby park. The discussion with Bloom pertained to Bloom suggesting that Scott's vehicle was repossessed and requesting Scott's execution of the stolen vehicle affidavit. ECF no. 56-1, 53:2-12, 80:10-20. The vehicle was reported stolen from Scott's aunt's house which lies a few feet away from the street sign of 48 Street and NW 6th Ave. Carriel BWC T22:45:47Z, ECF No. 154:8-12. As it relates to conversations with Guzman, he told Guzman, "I'm telling you, you guys got the wrong guy. I can confirm where I was and I can confirm my activities. I recently logged off the VPN at my job. Roughly before I came over here before I called you guys. But I'm telling you, you guys got the wrong guy…But that's half of Miami. Baldheaded with a beard. Even if he had dreads, it dreads with a beard. But then that's it's not fair I mean, like I said, my kids, I called because my car got stolen, and my kids are over there. They don't even know what's going on…I told you probably about my five. I didn't pay attention to the

time. I really…Just jumped out of the car to go see. That's it. If you want. Like I said, we can go. Like I had my kids. And stuff like that. Dropped them off, came over to say hi, and I went, I mean I don't know what happened. I don't know. I mean, like I said, I know the people that stay across there, over here, all over the place. I don't know what happened. My car just somebody jumped in drove off. And I'm sorry, but I tell you, I didn't do it. I mean, I. literally. I mean, why would I call the police? I mean, I called because my car is stolen. I mean, how me and my kids are going to get home? My pillow, my work Id, my work stuff. All of that stuff is in there. Why would I? That's why I'm like, what? What's why am I in handcuffs if I am calling them?" Guzman BWC 2, T22:59:38Z – T23:01:04Z.

65. Undisputed.

66. Undisputed.

67. Undisputed.

68. Undisputed.

69. Disputed in part. Scott could not provide an exact address because he didn't know the address. However, Scott told Guzman to ask his aunt, who was inside of the house, to confirm his cousin's address and provide the telephone number to confirm Scott's whereabouts. Guzman BWC 1, T22:55:00Z - T22:55:10Z. Guzman states the following to Scott: "The description of the car, of the guy that took off in your car is just like yours." Guzman BWC 2, T22:59:56Z – T23:00:00Z.

70. Disputed. As it relates to conversations with Guzman when Scott is in the backseat, he told Guzman: "I'm telling you, you guys got the wrong guy. I can confirm where I was and I can confirm my activities. I recently logged off the VPN at my job. Roughly before I came over here before I called you guys. But I'm telling you, you guys got the wrong guy…But that's half of Miami. Baldheaded with a beard. Even if he had dreads, it dreads with a beard. But then that's it's not fair I mean, like I said, my kids, I called because my car got stolen, and my kids are over there. They don't even know what's going on…I told you probably about my five. I didn't pay attention to the time. I really…Just jumped out of the car to go see. That's it. If you want. Like I said, we can go. Like I had my kids. And stuff like that. Dropped them off, came over to say hi, and I went, I mean I don't know what happened. I don't know. I mean, like I said, I know the people that stay across there, over here, all over the place. I don't know what happened. My car just somebody jumped in drove off. And I'm sorry, but I tell you, I didn't do it. I mean, I. literally. I mean, why

would I call the police? I mean, I called because my car is stolen. I mean, how me and my kids are going to get home? My pillow, my work Id, my work stuff. All of that stuff is in there. Why would I? That's why I'm like, what? What's why am I in handcuffs if I am calling them?" T22:59:38Z – T23:01:04Z.

71. Undisputed. Scott informed Guzman he had never been arrested because he had never been placed in handcuffs, taken to jail, booked and subsequently released. A notice to appear is not an arrest. *See A.J.M. v. Fla. Dep't of Law Enforcement*, 15 So. 3d 707, 709 (Fla. 3d DCA 2009) ("[A] notice to appear means a written order issued by a law enforcement officer *in lieu of physical arrest* requiring a person accused of violating the law to appear in a designated court or governmental office at a specified date and time.") (emphasis added in the original).

72. Undisputed.

73. Undisputed.

74. Disputed. The evidence cited does not support the facts alleged in paragraph 74. The citation supports that Guzman arrives at the police station to where Carriel (Male) and Carriel (female) are in a separate room from Scott, and Hernandez is guarding the room door in which Scott is located. Guzman BWC 4 T23:28:10Z - T23:28:30Z.

75. Disputed. The evidence cited does not support the facts alleged in paragraph 75. However, concedes that he was taken to the downtown office and was transported by Guzman.

76. Undisputed.

77. Undisputed.

78. Undisputed.

79. Disputed. Guzman spoke to the State Attorney's Office about this case four or five times. Ex. 3 Guzman Depo., 195:3-25.

80. Disputed. Bloom was called to court. Ex. 8, Bloom Depo. 129:12-20.

### Additional Facts

81. At the time of his encounter with Defendants, Scott was a 5'10" black man with a bald head. Ex. 11, Mugshot.

82. Scott's vehicle crashed before the time Guzman arrived at the crash scene. Ex. 3, Guzman Depo. 33:20-21.

83. The residents are predominantly African American in the area that the crash occurred. Ex. 3, Guzman Depo. 90:22-91:1.



84. Guzman concedes that he made a made a mistake on his report when he says as he fled, I observed a black male, bald, about six, two, heavyset with a white tank top running away from the scene. Ex. 3, Guzman Depo. 123:21-124:10.

85. Guzman stated that he had probable cause to arrest Scott because he observed a six foot two, black male, heavyset, running northbound on I-95. Ex. 3, Guzman Depo. 136:15-20, 23.

86. Despite being given instructions to Scott's aunt's house, Guzman did not attempt to verify Scott's alibi.

87. While in Bloom's presence, Scott did not change his clothes. Ex. 8, Bloom Depo. 34:2-4.

88. When Bloom made contact with Scott, Bloom did not suspect Scott of criminal activity and there was nothing suspicious about Scott's behavior. Ex. 8, Bloom Depo. 46:11-22; 64:1-4..

89. Without invitation from Scott, Guzman and Carriel went to Scott's location on their own accord. Ex. 8, Bloom Depo. 57:14-24. Bloom did not have any communications with Carriel and Gonzalez. Ex. 8, Bloom Depo. 57:14-61:12. In fact, Bloom did not know Carriel or Guzman until they arrived on 48th Street and NW 6th Ave. *Id*.

90. Bloom did not receive a BOLO for the person who stole Scott's car. Ex. 8, Bloom Depo. 71:6-18.

91. Bloom did not communicate a physical description of Scott to anyone. Ex. 8, Bloom Depo. 79:4-6.

92. Bloom had no idea the other officers were intending to arrest Scott and his co-defendants did not inform him whether there was probable cause to arrest Scott. Ex. 8, Bloom Depo. 90:13-91:18. In fact, Bloom knew they were conducting an investigation but there was no indication that Scott would be arrested. *Id*.

93. Bloom stated that the officers stated that it was a ***possibility*** that Scott may have been the person who got out of the perimeter but they were conducting investigation. Ex. 8, Bloom Depo. 92:15-25, 167:1-13.

94. Bloom stated his co-defendants said nothing about arrest and the arrest took place at the station. Ex. 8, Bloom Depo. 97:19-98:16.

95. Bloom stated there was no probable cause to arrest Scott for reporting his vehicle stolen. Ex. 8, Bloom Depo. 99:5-100:7.



600 Southwest 4th Avenue, Fort Lauderdale, Florida 33315

96. Bloom did not see the white t-shirt until he searched Scott. Ex. 8, Bloom Depo. 191:17-19, 22.

97. When Bloom made contact with Scott, Scott did not appear to have come from a run and concluded that people do not run in jeans. Ex. 8, Bloom Depo. 254:8-9, 12-17.

98. Bloom stated there was no probable cause to arrest Scott for simply being a heavy set black male and that description could fit a lot of people in Miami. Ex. 8, Bloom Depo. 119:1-8, 23-24, 120:1-7.

99. Williams went to a perimeter without speaking to his fellow officers. Ex. 5, Williams Depo. 17:20-18:7.

100. Guzman asked Williams to complete the crash report and Guzman relayed all the information that he knew concerning the crash. Ex. 5, Williams Depo. 28:2-7.

101. Guzman did not tell Williams, the writer of the crash report, that Samuel Scott Jr. fled his vehicle or that a black male, bald 6 foot 2, heavy set wearing white tank top fled northbound. Ex. 5, Williams Depo. 36:18-25.

102. Based on information relayed to Williams by Guzman and the CAD (computer aided dispatch) report, Williams reported that the crash occurred at 6:22 PM. Ex. 5, Williams Depo. 109:19-110:9; Ex. 3 Guzman Depo. 120:7-8, 10.

103. Prior to leaving the crash scene, Guzman does not inform Williams who the driver of the vehicle despite having Scott's work ID. Ex. 5, Williams Depo. 72:4-10, 16-22, 73:12-23, 84:1-7, 90:6-16, 93:19-25.

104. Prior to Guzman leaving the crash scene, Williams knew the owner of the vehicle based off of D.A.V.I.D. Ex. 5, Williams Depo. 74:4-6.

105. Prior to Guzman leaving the crash scene, Williams did not know the actual driver of the vehicle based off of D.A.V.I.D. Ex. 5, Williams Depo. 74:7-9.

106. Prior to Guzman leaving the crash scene, Williams knew that vehicle "1" in his report crashed into parked vehicle "2". Ex. 5, Williams Depo. 74:14-17.

107. Prior to Guzman leaving the scene, Williams knew that the location of the crash occurred on 515 NW 72nd Street. Ex. 5, Williams Depo. 74:18-20.

108. Prior to Guzman leaving the scene, Williams knew that an individual had fled northbound after the crash based off the information relayed to him by Guzman. Ex. 5, Williams Depo. 74:21-24.



109. Williams was not given the name of the individual who fled the crash scene or a description of the individual. Ex. 5, Williams Depo. 74:21-75:5.

110. Guzman did not tell Williams that the person who fled the crash scene was the individual who was seen in the work ID (MasTec identification card). Ex. 5, Williams Depo. 96:16-19, 24.

111. Williams did not know of Scott's work ID until he turned it into property for Guzman. Property Receipt. Ex. 5, Williams Depo. 97:1-11.

112. Scott observes Carriel pulling out his taser. Ex. 6, Carriel Depo. 57:16-17, ECF No. 56-1, 86:10-12.

113. Defendants that are surrounding Scott are Bloom, Hernandez, and Randy Carriel. Ex. 6, Carriel Depo. 87:10-14.

114. Guzman did not speak specifically to Hernandez when he arrived at Scott's location. Ex. 3, Guzman Depo. 60:1-4, 203:12-16.

115. There was no communications between Hernandez and Carriel. Ex. 3, Guzman Depo. 204:4-8.

116. Hernandez began searching Scott without instruction and was told to stop by Guzman. Ex. 3, Guzman Depo. 59:8-13, 60:7-9, 12, 61:5-6, 9-12.

117. Guzman did not consult with Carriel, Hernandez, or Bloom regarding making the arrest. Ex. 3, Guzman Depo. 65:2-5.

118. Guzman concedes that his arrest affidavit isn't a complete and accurate view of the facts as they existed at the time. Ex. 3, Guzman Depo. 242:2-4, 7.

119. Hernandez states that he has no idea what happened at the crash scene and that Guzman and Carriel were the arresting officers. Ex. 9, Hernandez Depo. 41:7, 9-10.

120. Hernandez and Carriel were frustrated that Scott's arrest was taking so long. Ex. 9, Hernandez Depo. 73:8-10, 74:3-5, 8-10, 103:1, 13-15.

121. Hernandez admits to searching Scott. Ex. 9, Hernandez Depo. 98:20-99:4.

122. Carriel expresses his frustration that the arrest is taking too long and explains to the officers in Spanish, "That is all we need. The white shirt under the black shirt." Ex. 9, Hernandez Depo. 101:9-20, 116.

123. Carriel continues to express his frustration and states in Spanish: "We are wasting time. We are losing." Ex. 9, Hernandez Depo. 108:18-21.



124. Hernandez concedes that there was uncertainty that Scott was the one who drove Scott's vehicle. Ex. 9, Hernandez Depo. 111:25-112:2, 9.

125. Hernandez did not know whether Scott was going to be arrested. Ex. 9, Hernandez Depo. 118:12-14, 16.

126. Hernandez concedes that we cannot rely on his independent recollection of the events but we should just go with the video. Ex. 9, Hernandez Depo. 132: 18-22.

127. Hernandez says you cannot trust what he says if it is not on the video. Ex. 9, Hernandez Depo. 133:22-134:9.

128. Hernandez did not speak to either Carriel or Guzman prior to them speaking with Bloom. Ex. 3, Guzman Depo. 126: 9-12, 17.

129. Hernandez concedes he is reconstructing his story based on the video. Ex. 9, Hernandez Depo. 138:18-140:8. Hernandez concedes that his interrogatories responses and his deposition testimony were different because at the time he and his attorney did not have the video so that's why he failed to state that Guzman and Carriel positively identified Scott. Ex. 9, Hernandez Depo. 138:18-140:8.

130. Carriel clapped his hands upon Scott being placed in handcuffs and escorted to the patrol car. Carriel BWC T22:54:09Z - T22:54:18Z.

131. All charges were dropped. ECF 56-1, 7-10.

## CERTIFICATION

I certify that the following document hereof has been served on counsels of records on 2/17/2023.

Attorneys for Plaintiff

PIERRE **SIMON**

600 Southwest 4th Avenue,
Fort Lauderdale, Florida 33315
By: s/Faudlin Pierre
Faudlin Pierre, Esq.
FBN. 56770
fplaw08@yahoo.com
(305) 336-9193

