UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-cv-23995-HUCK/Becerra

SAMUEL SCOTT JR.,

    Plaintiff,

vs.

CITY OF MIAMI, a
Political subdivision of the
State of Florida, JONATHAN
GUZMAN, MICHAEL BLOOM,
BRANDON WILLIAMS,
MIGUEL HERNANDEZ and
RANDY CARRIEL, sued in their
individual capacity,

    Defendants.

_____/

## DEFENDANTS' JOINT REPLY STATEMENT OF MATERIAL FACTS

Defendants, CITY OF MIAMI, JONATHAN GUZMAN, MICHAEL BLOOM, MIGUEL HERNANDEZ, and RANDY CARRIEL, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56, S.D. Fla. L.R. 56.1, and this Court's Orders [ECF Nos. 6, 22], hereby file this Joint Reply to Plaintiff's Statement of Material Facts [ECF No. 69]. Defendants submit this Reply to Plaintiff's counterstatements of their Material Facts set forth in ¶¶ 1-80 and to Plaintiff's "additional facts" set forth in ¶¶ 81 – 131. Defendants' "disputes" are primarily to clarify the facts of the case, address mischaracterization of testimony, and direct the Court to accurate citations of indisputable record evidence to demonstrate that no genuine issue of material fact exists.[1]

---

[1] S.D.Fla.L.R. 56.1(b)(1)(A) provides: "All Statements of Material Facts (whether filed by the movant or the opponent)…shall not exceed ten (10) pages. The Opponent's Additional Facts "may not exceed five (5) pages []beyond the ten- (10) page limit for the opponent's Statement of Material Facts." S.D.Fla.L.R. 56.1 (b)(2)(D). Plaintiff's responsive Statement of Material Facts is seventeen (17) pages. Notably, Plaintiff's "additional Facts" do not exceed the allotted five pages, however, his response to Defendants' Statement of Material Facts exceeds the ten page limit by three (3) pages. Plaintiff neither requested nor received any page limit extension for his statements of material facts.

3.     Disputed. At deposition, Plaintiff testified that if he put tints on the car, they were "super light". ECF No. 56-1 at pp. 70-71. The lanyard did not obstruct Guzman's view of the driver. ECF No. 69-3 at pp. 212-213. The arrest affidavit is silent on details regarding Guzman's observation of what he saw in the vehicle, but his uncontroverted testimony provides the information of what he saw in the Compass. ECF No. 69-2; ECF No. 69-3 at pp. 24-25, 48, 146-149. [2]

4.     Disputed. 212-213. *See supra* at ¶ 3. Absent from the arrest affidavit written post-arrest, is information about what Guzman observed in the vehicle, but rather included a physical description of fleeing suspect when his full body could be seen. ECF No. 69-2. Guzman's testimony about first observing and individual identified as "Samuel Scott" through his work ID[3] does not negate his initial observation of the driver of the Jeep Compass, who he pursued, and fled on foot. Guzman had no prior interactions with Scott prior to June 1, 2018 and therefore could not have identified the driver of the Jeep Compass as "Scott" until seeing the physical Identification and linking the name to person. ECF No. 69-3 at pp. 91, 63-64. Guzman first observed the driver , including his face, through the windshield of the black Jeep Compass as he clocked the approaching vehicle from when it was 30 feet in front of him until it passed him directly to his right. ECF No. 69-3 at pp. 24, 25, 48, 146-149.

5.     Disputed. The arrest affidavit indicates "18:05" under arrest time. ECF No. 69-2. The narrative provides "at the above date and time on routine patrol I was conducting radar detail…". *Id*. The undisputed video evidence clearly shows Plaintiff was not arrested at 6:05 p.m. based on the video time-stamps matching a cell phone time of the police encounter. ECF No. 57 at ¶ 28 n.4.

---

In addition, Plaintiff's factual responses were not concise, repetitive, argued legal conclusions instead of responding succinctly to facts, and many of his responses contained rambling arguments based on his interpretation of the evidence in violation of Local Rule 56.1." *See Hayes v. ATL Hawks, LLC*, 844 F. App'x 171, 185 (11th Cir. 2021). Rather than provide lengthy responses in an attempt to create genuine dispute where none exist, Plaintiff should have incorporated many of his responses to his "additional facts."

[2] Plaintiff copies the same "facts" in his Response regarding the tints on the Jeep Compass, and Plaintiff's work ID multiple times in an effort to oppose various and different sequential facts presented by Defendants. *See* ¶¶ 4, 11, 14, 37, 44, 58.

[3] Again, Plaintiff's Response repeats the same reference to Guzman's mischaracterized testimony regarding his observation of the driver and Scott as well as the physical description provided in the arrest affidavit completed by Guzman (after the arrest) to counter various undisputed facts. *See* ¶¶ 3, 4, 14, 31, 37, 44, 58.

10. Disputed. The crash occurred on 515 NW 72nd Street. ECF No. 69-4 at p. 1. Guzman's deposition transcript provides "54 and 72nd Street". ECF No. 69-3 at p. 162. This is likely a transcription error for 5th.

11. Disputed. *See supra* at ¶ 4. Guzman observed only the back of the driver as he fled the scene. ECF No. 69-3 at p. 166. Plaintiff cites to Carriel's deposition refreshing Carriel's memory that Plaintiff was wearing long jeans. ECF No. 69-6 at p. 127. Carriel had previously stated that the man in the video (Plaintiff) was wearing a black shirt and shorts and "believed" the description by Guzman included shorts. *Id*. at p. 48; 41-42.

12. Disputed. Sampson testified that he "shut the perimeter down because we could not get officers in the area within enough time to cover all the perimeter coordinates." ECF No. 69-7 at p. 37. He also testified that the perimeter "was up for a short time." *Id*. at p. 46.

14. Disputed. *See supra* ¶¶ 3-4. Plaintiff provided no citation for the accusation that "Guzman lied to Sampson" and should be disregarded.

15. Disputed. After repeatedly stating he did not recall the description provided by Guzman, Carriel stated that he "believed" the description given by Guzman included shorts, but his memory was refreshed when he viewed the body cam video. ECF No. 69-6 at pp. 41-42, 127.

17. Disputed. Although Bloom testified that he did not speak to Guzman or Carriel, he later testified that he spoke to someone but had no idea who it was, on another channel. ECF No. 69-8 at pp 57-58, 76-78. Bloom further testified he did not know who Guzman was at that time. *Id*. at p. 77. The testimony cited by Plaintiff provides that he did not personally reach out to Guzman or Carriel and that "there was something going on prior to us coming on shift, and they heard the transmission and they said they were going to send some units over to do that investigation because it appears like it's the same vehicle…" *Id*. at p. 57.

20. Disputed. Guzman heard the BOLO over the radio for a stolen vehicle matching the tag number of the vehicle involved in the collision while conducting inventory on the vehicle *after*[4] the crash. ECF No. 69-3 at pp. 43, 115, 175.

21. Disputed. To support Plaintiff's statement that Bloom found Scott in front of his aunt's house, Plaintiff cites to his deposition transcript where he states "I was almost there", "there"

---

[4] Plaintiff does include citation for his statement that Guzman learned that vehicle was stolen at time of crash.

meaning his aunt's address, before the police arrived. ECF No. 56-1 at p. 77. He also states he was walking "a little bit around" as well as "sitting outside underneath the tree." *Id*.

23. Disputed. Plaintiff stated that he was at his cousin's house and that he "jumped in the car" to go to his auntie's house to see his cousin real quick. ECF No. 56-1 at pp. 66-67.

24. Disputed. The affidavit given to Plaintiff by Bloom indicated that falsifying the report was a punishable offense. ECF No. 56-3 at p. 94.

29. Disputed. The video evidence makes clear that there was no uncertainty amongst the officers about Guzman's identification of Plaintiff. Carriel is immediately heard stating "that's him, that's the bailout". Carriel BWC at T22:45:50Z. Without any further information, Guzman tells his supervisor "Sarge, that's your boy." Guzman BWC 1, at T22:46:40Z. Officer Hernandez initiates an attempt to place Plaintiff in handcuffs. Guzman BWC 1, at T22:47:21Z. The fact that Guzman only detained Plaintiff initially and called his supervisor to obtain approval prior to effectuating an arrest does not indicate that he was uncertain; rather, Guzman chose to verify information and get approval from his sergeant prior to effectuating an arrest. ECF No. 56-3 at pp. 61, 184-185, 203. To support his statement that Defendants were uncertain as to "whether Scott was the guy" from the previous scene, Plaintiff cites to Carriel's deposition where he clearly states that "Guzman wanted to collect as much evidence as possible, but that doesn't mean he was not sure of who the subject was. He was very sure…" ECF No. 69-6 at pp. 163-164. Carriel, stating if this is the guy you saw, we don't have to wait for anything (as phrased by Plaintiff's counsel) is not a concession that there was a question as to whether Guzman saw the driver. ECF No. 69-6 at pp. 173-175. Plaintiff cites to Bloom's deposition where he states that there was no reason to believe Plaintiff was involved in any criminal activity when he first arrived on scene and spoke to Plaintiff about a call for service for a stolen vehicle and no one else was on scene. ECF No. 69-8 at pp. 45-47; 111-112.[5]

31. Disputed. *See supra* ¶¶3-4, 29. Plaintiff further cites to Hernandez's deposition where he clearly explained his interpretation of Carriel's statement regarding "what more do you need for

---

[5] Similarly, Plaintiff's assertions about the Defendants being aware of Guzman's uncertainty regarding Plaintiff's identity as the fleeing suspect are repeated on various occasions. *See* ¶¶ 29, 31, 37, 44, 57. These unadorned assertions are made despite Guzman and Carriel's statements made on camera at the time of the detainment. (ie: "that's the bail-out"; "Sarge, that's your boy.") Carriel BWC at T22:45:50Z; Guzman BWC 1, at T22:46:40Z.

an arrest" is that the "officer ID'd your client" as the driver of the vehicle who fled the scene. ECF No. 69-9 at pp. 111-112.

37.     Disputed. *See supra* ¶¶3-4, 29. In the citation provided by Plaintiff, Guzman responded "correct" when asked if there was probable cause to arrest Plaintiff based on the description in the arrest affidavit alone. ECF No. 69-3 at p. 136. Bloom's testimony cited by Plaintiff is contradicted by video evidence which shows that Officer Carriel tells Officer Bloom on the scene "that's him, that's the bailout.". Carriel BWC at T22:45:50Z. In response, Officer Bloom, is heard saying "that's the bail-out?" Guzman BWC 1, at T22:45:53. Moreover, Bloom testified that he did not know whether the officers intended to arrest Scott because he was only being detained and the decision to arrest was on the primary officers. ECF No. 69-8 at p. 90-92. Plaintiff cites to Hernandez's deposition where he explained his interpretation of Carriel's statement regarding what more do you need for an arrest is that the "officer ID'd your client" as the driver of the vehicle who fled the scene. ECF No. 69-9 at pp. 111-112. Plaintiff further misinterprets Hernandez's testimony where he clearly states that during a certain time period, "from 8:35 to 8:51", Plaintiff was not *actually* being arrested. ECF No. 69-9 at p. 118.

38.     Disputed. Hernandez did not in any form state that "you cannot trust what he says" according to Plaintiff. Instead, Plaintiff's cite to Hernandez's testimony reads that any inaccuracies in his interrogatory response where he stated "plaintiff was not searched by me," To the extent any search was conducted that can be given to me, Plaintiff had already been just detained" was based on his independent recollection from five years earlier without the use of the videos. ECF No. 69-9 at pp. 133-134.

44.     Disputed. *See supra* ¶¶3-4, 29.

45.     Disputed. Hernandez did not participate in making the decision to physically arrest Plaintiff. ECF No. 69 at ¶ 117. Moreover, Plaintiff improperly relies on case law in the Statement of Facts.

52.     Disputed. Bloom stated he did not perceive Plaintiff to be dangerous at the time he was told more units were being sent to his scene, not at the time of the search which is what Plaintiff addresses. ECF No. 69-8 at pp. 79-81.

53.     Disputed. Officer Carriel made comments referring to Plaintiff's white shirt underneath approximately three (3) minutes prior to pat-down search. Carriel BWC at T22:47:50Z - T22:50:20Z. Plaintiff incorrectly claims the search itself revealed the white undershirt.

57. Disputed. *See supra* at ¶ 29. Carriel stating if this is the guy you saw, we don't have to wait for anything (as phrased by Plaintiff's counsel) is not a concession that there was a question as to whether Guzman saw the driver. ECF No. 69-6 at pp. 173-175.

58. Disputed. *See* supra ¶¶3-4. The full quote does not suggest that the identity of the individual was in question but clearly states "that's him" and that Guzman did not know whether someone else saw the guy or not indicating there was no secondary witness. Guzman BWC 1, at T22:51:25Z.

74. Disputed. Plaintiff misinterprets citation. Defendants introduce Guzman BWC 4 by indicating its start time, T23:28:10Z, then cites to T23:28:30Z where the video begins to show the facts stated in ¶ 74.

79. Disputed. Plaintiff mischaracterizes Guzman's testimony. Guzman testified he spoke to the State Attorney's Office only once of the four or five times he was called to the Courthouse. ECF No. 69-3 at pp. 195:10-16.

80. Disputed. Bloom testified that when he went to court, he did not speak to anyone. ECF NO. 69-8 at pp. 130-131.

## Additional Facts

81. Undisputed.

82. Undisputed.

83. Undisputed.

84. Disputed in part. Guzman's testimony does not indicate which portion of that phrase was mistaken and the arrest affidavit provides "bold" instead of "bald". ECF No. 69-3 at p. 124; ECF No. 69-2.

85. Disputed in part. In the citation provided by Plaintiff, Guzman responded "correct" when asked if there was probable cause to arrest Plaintiff based on the description in the arrest affidavit alone. ECF No. 69-3 at p. 136.

86. Disputed. Plaintiff does not provide any citation to support this statement. Guzman sought an alibi regarding Plaintiff's prior whereabouts but Plaintiff could not give an exact address of where he was. ECF No. 57 at ¶ 69.

87. Undisputed.

88. Undisputed.

89. Disputed. Although Bloom testified that he did not speak to Guzman or Carriel, he later testified that he spoke to someone but had no idea who it was, on another channel. ECF No. 69-8

at pp 57-58, 76-78. There is no reference to a "Gonzalez"[6] in the testimony cited by Plaintiff. ECF No. 69-8 at pp. 57-61.

90.     Undisputed.

91.     Undisputed.

92.     Disputed. Bloom testified that did not know whether the officers intended to arrest Scott because he was only being detained and the decision to arrest was on the primary officers. ECF No. 69-8 at p. 90-92

93.     Disputed in part. Bloom's testimony is in reference to the information disclosed by Officers Guzman and Carriel when he was approached by them while in his car. ECF No. 69-8 at p 92. Bloom's testimony cited by Plaintiff is contradicted by video evidence which shows that Officer Carriel tells Officer Bloom on the scene "that's him, that's the bailout.". Carriel BWC at T22:45:50Z. In response, Officer Bloom, is heard saying "that's the bail-out?" Guzman BWC 1, at T22:45:53.

94.     Disputed. Bloom's testimony cited by Plaintiff actually provides that when Guzman and Carriel arrived on the scene, which is Bloom's first interaction with them, they did not say anything about arresting anyone. ECF No. 69-8 at pp. 96-98.

95.     Disputed.  Bloom testified that he did not have probable cause to arrest Plaintiff solely on the information he had which was that Scott reported his vehicle stolen. ECF No. 69-8 at pp. 99-100.

96.     Disputed. Bloom's testimony cited by Plaintiff actually provides that he could not recall when he first discovered the white t-shirt but that in the video you could see the neck portion of the white shirt underneath the black shirt and at other times both in front of and behind him. ECF No. 69-8 at pp. 191-192.

97.     Undisputed.

98.     Undisputed.

99.     Disputed. Williams Deposition page 18 is not included in Plaintiff's Exhibit 5. ECF No. 69-5 at pp. 1-14. Williams testified that he immediately took post although nobody called him for a perimeter point, not perimeter in general. *Id*. at p. 5.

---

[6] Presumably, Plaintiff means Guzman instead of Gonzalez.

100. Disputed. Williams testified that Guzman "advised me of what occurred" and that Guzman only advised him "that a hit and run had occurred, and the suspect bailed out. That was it." ECF No. 69-5 at p. 6. The cited page did not state that Guzman relayed *all the information that he knew concerning the crash*. *Id*.

101. Undisputed.

102. Undisputed.

103. Disputed. Williams Deposition pages 72, 73, 84, 90, and 93 are not included in Plaintiff's Exhibit 5. ECF No. 69-5 at pp. 1-14.

104. Undisputed.

105. Undisputed.

106. Undisputed.

107. Undisputed.

108. Undisputed.

109. Undisputed.

110. Undisputed.

111. Undisputed.

112. Disputed. The testimony cited by Plaintiff provided that while Bloom and Hernandez patted him down, Carriel was behind him holding out his Taser, and thus Plaintiff could not have observed Carriel pull out his Taser based off his own testimony. ECF No. 56-1 at p. 86. However, Carriel testified that he pulled out his Taser in case Plaintiff decided to run again, based on Guzman's identification that "this subject had already ran from Guzman." ECF No. 69-6 at pp. 57-58.

113. Undisputed.

114. Undisputed.

115. Disputed. Although Guzman first stated there were no communications between Carriel and Hernandez because "Carriel was with me at the scene," he followed up by stating it was possible that the other officers were speaking with one another while he was speaking with his sergeant. ECF No. 69-3 at p. 204. Specifically, Plaintiff's counsel asked, "so it's possible that the other officers were speaking with one another while you were speaking with your sergeant. Is that fair to say?" to which Guzman responded, "Yeah. I mean, we were all – once I got to the scene, everybody knew what was going on." *Id*.

116. Undisputed.

117. Undisputed.

118. Undisputed.

119. Undisputed.

120. Disputed in part. Hernandez states that Carriel seemed frustrated on the video and that maybe he said something. ECF No. 69-9 at pp. 73-74. Whether or not they were frustrated is an opinion not a material fact and negates any alleged uncertainty in the identification of Plaintiff by Guzman.

121. Disputed. Hernandez does not admit to "searching" Scott; rather Hernandez stated that he took the wallet from Plaintiff's pocket. ECF No. 69-9 at pp. 98-99.

122. Disputed. The testimony cited by Plaintiff does not indicate any frustration on the part of Carriel. ECF No. 69-9 at p. 101.

123. Disputed. The testimony cited by Plaintiff does not indicate any frustration on the part of Carriel. ECF No. 69-9 at p. 108. Hernandez interprets Carriel's Spanish dialogue as "wasting time. We are losing." But this is not clear from the video evidence. *Id.*; Carriel BWC at T22:50:05Z.

124. Disputed. Plaintiff cites to Hernandez's deposition where he clearly stated his interpretation of Carriel's statement regarding what more do you need for an arrest is that the "officer ID'd your client" as the driver of the vehicle who fled the scene. ECF No. 69-9 at pp. 111-112.

125. Disputed. Plaintiff further misinterprets Hernandez's testimony where he clearly states that during a certain time period, "from 8:35 to 8:51", Plaintiff was not *actually* being arrested. ECF No. 69-9 at p. 118.

126. Undisputed.

127. Disputed. Hernandez did not in any form state that you cannot trust what he says; rather, an accurate reading of the testimony cited by Plaintiff clearly shows that he stated any inaccuracies in his interrogatory response where he stated "plaintiff was not searched by me. to the extent any search was conducted that can be given to me, Plaintiff had already been just detained" was based on his independent recollection from five years earlier without the use of the videos. ECF No. 69-9 at pp. 133-134.

128. Undisputed.

129. Disputed. When asked why certain statements which were stated in his deposition were not included in his interrogatory answers, Hernandez stated he answered the interrogatories based on his independent recollection and later saw what transpired on the video which is what he based his testimony off of. ECF No. 69-9 at pp. 138-140. Plaintiff's counsel used the missing positive identification as an example; however, Hernandez did not state that he failed to state in his interrogatories that Guzman and Carriel positively identified Scott because he did not have the video. *Id*.

130. Disputed. Carriel testified that he was not sure what he was doing but he was not "clapping" his hands and possibly annoyed. ECF No. 69-6 at pp. 175-176.

131. Undisputed.

WE HEREBY CERTIFY that on this 28th day of February, 2023, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ _Brandon L. Fernandez_____
Victoria Mendez, City Attorney
Brandon L. Fernandez (FBN: 1002969)
Assistant City Attorney
bfernandez@miamigov.com
tmickens@miamigov.com
dbailey@miamigov.com
Bryan Capdevila, Esquire
Florida Bar No: 119286
Office of the City Attorney
City of Miami
444 S.W. 2nd Avenue, 9th Floor
Miami, FL 33130-1910
BCapdevila@miamigov.com
(305) 416-1800
(305) 400-5071 (fax)
*Attorneys for Defendants City of Miami, Guzman, Bloom, Williams, and Carriel*

/s/ _Lourdes Espino Wydler_____
Lourdes Espino Wydler (FBN: 719811)
lew@wydlerlaw.com
Lauren D. Martin (FBN: 1034166)
ldm@wydlerlaw.com
WYDLER LAW
2600 Douglas Road, PH-4
Coral Gables, FL 33134
Tel: (305) 446-5528
Fax: (305) 446-0995
*Attorneys for Defendant Hernandez*

## SERVICE LIST

Faudlin Pierre, Esq.
Florida Bar No: 56770
Fplaw08@yahoo.com
PIERRE SIMON
60 S.W. 4th Avenue
Ft. Lauderdale, FL 33315
(305) 336-9193
*Counsel for Plaintiff.*