UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-23995-HUCK/Becerra

**SAMUEL SCOTT JR.,**

    Plaintiff.

v.

**CITY OF MIAMI, et al**,

    Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court upon Defendants City of Miami, Jonathon Guzman, Michael Bloom, Brandon Williams,[1] Miguel Hernandez, and Randy Carriel's ["Defendant['s]"] Joint Motion for Summary Judgment, filed pursuant to Federal Rules of Civil Procedure 56 and Southern District of Florida Local Rule 56.1 on January 24, 2023.  Plaintiff Samuel Scott Jr. filed his Response in Opposition to the Motion on February 17, 2023, and Defendants filed their Reply on February 28, 2023.  The parties also filed statements of material facts.  The Court has reviewed the relevant filings and the record.  The Court held oral argument on the Motion on March 10, 2023.  For the reasons explained below, the Defendants are entitled to qualified immunity, and the Defendants' joint motion for summary judgment is **GRANTED**.

### I.  BACKGROUND

In the late afternoon on June 1, 2018, Officer Guzman was conducting a radar detail at NW 12th Avenue and NW 67th Street.  Guzman positioned his marked car facing northbound in

---

[1] Brandon Williams was subsequently dismissed on January 25, 2023, following a stipulation of dismissal.  [ECF No. 59].

1

the grassy median closest to the curb. Guzman "clocked" a black Jeep Compass traveling southbound at approximately 50 miles per hour in a 30 miles per hour zone. He was able to see inside the Jeep through the windshield from when it was 30 feet away until it passed Guzman directly to his right. There was a tint on the edges of the windshield, and a "super light" tint on the Jeep's windows. Additionally, there was a lanyard hanging from the rearview mirror. Guzman testified that he saw the driver's face and described him as a heavyset, bald, black male with a white tank top and no glasses, who he later identified as Scott.

Guzman began to trail the Jeep, and after observing additional traffic violations, he turned on his lights and sirens. The Jeep picked up speed and eventually crashed into another vehicle at 515 Northwest 72nd Avenue at approximately 6:22 p.m. As Guzman approached, the driver jumped out of the Jeep and ran north, getting away. Guzman noticed that the driver was, and later described him as, a heavyset bald Black male, approximately 6'2" wearing a white tank top and dark jeans. Guzman found Scott's MasTec employee photo identification card hanging from the Jeep's rearview mirror. Guzman believed the person he saw driving the Jeep and fleeing from the scene was the same person pictured on the ID card — Scott.

After the crash, Guzman heard a "be on the lookout" notice ("BOLO") over the radio for a stolen Jeep with the tag number of the Jeep involved in the collision. Scott had advised Miami Police Department that the Jeep had been stolen from 48th Street and 6th Avenue. Scott advised the police that he would meet them at that location. As a result of that, the BOLO had been sent out.

In response to the BOLO, Officer Bloom arrived at 563 NW 48th Street at approximately 6:30 p.m. where he met Scott, a bald heavyset Black male wearing a dark colored shirt with dark colored jeans. He was also wearing a white shirt underneath the dark colored shirt. Scott says

2

he stands 5'10" tall.  Bloom asked Scott about the stolen Jeep, and Scott said his Jeep had been stolen and that it was last seen at NW 6th Avenue and 48th Street.  Scott then filled out a stolen vehicle affidavit in which he was unable to identify or describe the thief.

At 6:45 p.m., approximately 15 minutes after Bloom met with Scott, Officers Guzman, Carriel, and Hernandez arrived at the scene.  Based on Guzman's description of the driver of the Jeep given to him earlier and upon seeing Scott, Carriel immediately said, "that's him, that's the bailout."  Then Guzman told his supervisor, "Sarge, that's your boy."  Hernandez attempted to put Scott in handcuffs but was stopped by Guzman.  Guzman told Hernandez "QRX" repeatedly, which is police code for "stand by."  Guzman told Scott he was being detained.

After Scott was handcuffed, Guzman asked Hernandez to put Scott in his car.  Scott was then transported to a police substation.  Guzman arrived at 7:28 p.m. and read Scott his Miranda rights.  At 7:30 p.m., Guzman transported Scott to the downtown office to speak to a detective.  Ultimately, Scott was transported to Turner Guilford Knight Correctional Center.  He was not released until midnight the following evening.  Charges were filed and subsequently dismissed.  As a result Scott brought this action for unlawful search and seizure, false imprisonment, and malicious prosecution against Defendants.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the movant shows that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Genuine issues of material fact exist when "a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

All factual inferences must be considered in a light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).

The movant has the initial burden of showing that genuine issues of material fact do not exist. *See Clark v. Coats & Clarks, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant "may carry its burden of showing no genuine issue of material fact by showing 'an absence of evidence to support the nonmoving party's case.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 723 (11th Cir. 2019) (quoting *Celotex Corp.*, 477 U.S. at 325). Once the moving party has met its burden, the burden shifts to the non-moving party to come forward with evidence showing genuine issues of material fact. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). "[I]f the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  DISCUSSION

#### A.  Qualified Immunity

In his Response, Scott first argues that the qualified immunity doctrine is unconstitutional. In partial support, Scott cites to dissenting and concurring opinions from the Supreme Court. However, Scott patently ignores the Supreme Court's repeated affirmation of the qualified immunity doctrine's validity. Thus, the Court rejects Scott's invitation to "overturn" such binding precedent.

To be entitled to qualified immunity, an official must first establish that his conduct was within the scope of his discretionary authority. *See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1281 (11th Cir. 1998)*. It is undisputed, as Scott acknowledged at the oral argument, that

Defendants were acting in the scope of their discretionary authority. Therefore, the burden shifts to Scott to establish that the qualified immunity defense does not apply. *See id*. To do so, Scott has the burden of showing that the Defendants violated a constitutional right and that the constitutional right was clearly established at the time of the alleged violation. *See id.* at 1284. Scott has not carried that burden.

### B. Probable Cause

The primary question this Court must address is whether the officers had probable cause to detain and arrest Scott. Scott conceded at the oral argument, as he must, that if Guzman had probable cause to detain and arrest him, all of his claims fail. Both in his Response and in oral argument, Scott relied on two former Fifth Circuit cases to support his position that Guzman did not have probable cause. However, the cases do not support Scott's position because they are materially different from the facts in this case.

In *United States v. Jones*, 619 F.2d 494, 496–97 (5th Cir. 1980), an officer searched and arrested the defendant based on an incomplete portion of a police bulletin he had heard the day before. The officer's impression from the bulletin was that police were looking for a robbery suspect described as "a black male, 5 feet 6 inches tall and weighing between 150 and 180 pounds, with a medium afro hair style, who was wearing jeans and a long denim jacket." *Id.* at 497. Although the defendant seemed to fit the general description, the court held that the officer did not have probable cause to search and arrest the defendant because the officer "acted on the basis of an incomplete and stale description of a suspect that could, plainly, have fit many people." *Id.* at 498. In its decision, the court emphasized that this was "not a case where an officer [had] acted upon timely information of criminal activity. *Id.*

In *United States v. Rias*, 524 F.2d 118, 119 (5th Cir. 1975), an officer stopped, arrested, and searched the car of two defendants who matched the limited description he was given of suspects in a series of robberies, the most recent of which, as far as the officer knew, had happened at least two weeks prior.  The suspects were described as two Black males in a black or blue Chevrolet, and the defendants in this case were two Black males driving in a black Chevrolet.  *Id.*  In explaining why the officer did not have reasonable suspicion — an even lower threshold than probable cause — for the initial stop, the court relied largely on the vague description and the amount of time that had elapsed since the last known robbery.  *Id.* at 121.

The instant case is materially different from *Jones* and *Rias* in ways that call for a different result here.  Most significantly, unlike in those cases, here, the officer who made the arrest is the same officer who witnessed the criminal activity.  In both *Jones* and *Rias*, officers relied on incomplete descriptions of suspects provided by others.  Here, Guzman actually saw the suspect driving and then fleeing the Jeep and thus obtained a more thorough description, which he reported from the scene: "[B]lack male, bold [sic], about 62, heavy set, with a white tank top . . . ."[2]

Additionally, unlike in the present case, the descriptions of the suspects at issue in the former Fifth Circuit cases were "stale."  *Jones*, 619 F.2d at 494.  Shortly after seeing the suspect flee, Guzman found Scott's MasTec employee photo identification card hanging from the rearview mirror of the abandoned Jeep.  Guzman recognized the man in the photo as the driver of the Jeep

---

[2] Scott said he is 5'10", which is four inches shorter than Guzman's "about 62" description of the fleeing suspect.  Unlike the other descriptors Guzman gave, height is often subject to a general approximation because it is so difficult to accurately ascertain, one made more difficult here by the fact that the suspect was only seen seated in the car and then running away.

and was then able to identify Scott, by name, as the fleeing suspect.[3] Finally, within thirty minutes of the crash, Guzman arrived at the scene of the car theft investigation and recognized Scott as the individual he had seen driving and then fleeing from the Jeep.

The Court finds that the instant case is clearly distinguishable from the two cases upon which Scott relies to make his case because (1) the arresting officer, Guzman, was also the witness, (2) Guzman had a more detailed, informative description of the suspect — his own, (3) there was Scott's photo identification in the Jeep, and (4) only a short time had elapsed between Guzman's last observation of the suspect and Scott's arrest.

Thus, this Court concludes that there is no genuine issue of a material fact that Guzman had probable cause to detain and arrest Scott based on his identification of Scott as the suspect. Moreover, based on Guzman's identification of Scott given to them, Officers Michael Bloom, Miguel Hernandez, and Randy Carriel had probable cause based on the fellow officer rule. *See Terrell v. Smith*, 668 F.3d 1244, 1252 (11th Cir. 2012). Also, there is no evidence that the officers' actions were done with malice or bad faith because there was probable cause for the detention and arrest. Thus, Scott's claim against the City of Miami fails. Fla. Stat. § 768.28(9)(a). As conceded by Scott, because Guzman had probable cause, all of Scott's counts fail.

### IV. CONCLUSION

For the reasons explained above, it is hereby

**ORDERED AND ADJUDGED** that Defendants' joint motion for summary judgment is **GRANTED**. The Court shall enter a separate judgment forthwith.

---

[3] In addition to Guzman witnessing the driver who fled from the Jeep, Scott's photo identification card provided additional circumstantial evidence upon which Guzman could reasonably rely to identify Scott as the driver of the Jeep.

**DONE AND ORDERED** in Miami, Florida, on March 21, 2023.

_____
PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
All Counsel of Record